IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LIBERTARIAN NATIONAL COMMITTEE, INC., <br><br> Plaintiff, <br> v. <br><br> MIKE SALIBA, <br> RAFAEL WOLF, <br> GREG STEMPFLE, <br> ANGELA THORNTON-CANNY, <br> JAMI VAN ALSTINE, <br> MARY BUZUMA, and <br> DAVID CANNY, <br> JOSEPH BRUNGARDT <br><br> Defendants., | CIVIL ACTION NO.: <br><br> 23-cv-11074 <br><br><br><br><br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND
OTHER LANHAM ACT VIOLATIONS UNDER 15 U.S.C. §§ 1114, 1125**

1. This is an action under the laws of the United States, Title 15 of the United States Code, for trademark infringement, false designation of origin, false advertising, unfair competition, passing off, and unjust enrichment under 15 U.S.C. §§ 1114, and 1125(a)(1)(A) and (B), in which Plaintiff Libertarian National Committee, Inc. ("LNC" or "Plaintiff"), makes the following allegations against Mike Saliba, Rafael Wolf, Greg Stempfle, Angela Thornton Canny, Jami Van Alstine, Mary Buzuma, Danny Canny and Joseph Brungardt (collectively "Defendants").

**PARTIES**

2. Plaintiff LNC is a District of Columbia Corporation, having its primary office at 1444 Duke St, Alexandria, Virginia, 22314.

3. Defendant Mike Saliba ("Saliba") is an individual residing within Michigan. Upon information and belief, Saliba resides at 16231 Scenic Clinton TWP, Macomb, Michigan 48038.

4. Defendant Rafael Wolf ("Wolf") is an individual residing within Michigan. Upon information and belief, Wolf resides at 1418 Elkerton Avenue, Kalamazoo, Michigan 49048.

5. Defendant Greg Stempfle ("Stempfle") is an individual residing within Michigan. Upon information and belief, Stempfle resides at 2615 Hyland, Ferndale, Michigan 48220.

6. Defendant Angela Thornton Canny ("Thornton Canny") is an individual residing within Michigan. Upon information and belief, Thornton Canny resides at 15223 Ripple Drive, Linden, Michigan 48451.

7. Defendant Jami Van Alstine ("Van Alstine") is an individual residing within Michigan. Upon information and belief, Van Alstine resides at 28158 Heather Way, Romulus Michigan 48174.

8. Defendant Mary Buzuma ("Buzuma") is an individual residing within Michigan. Upon information and belief, Buzuma resides at 714 S. Beacon Blvd, Apt. 76, Grand Haven, Michigan 49417.

9. Defendant David Canny ("Canny") is an individual residing within Michigan. Upon information and belief, Canny resides at 15223 Ripple Drive, Linden, Michigan 48451.

10. Defendant Joseph Brungardt ("Brungardt") is an individual residing within Michigan. Upon information and belief, Brungardt resides at 4140 8-1/2 Mile Road, Sterling Heights, Michigan 48116.

**JURISDICTION AND VENUE**

11. This action arises under the commerce and trade laws of the United States, Title

15 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

12. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1)&(2).

## FACTS COMMON TO ALL CLAIMS

13. Plaintiff, Libertarian National Committee, Inc., is the National Committee of the Libertarian Party as defined by 52 U.S.C. §30101(14) and manages the business of the Libertarian Party throughout the United States at the national level, including by functioning as a libertarian political entity separate and distinct from all other political parties or movements; electing Libertarians to public office to move public policy in a libertarian direction; chartering affiliate parties throughout the United States and promoting their growth and activities; nominating candidates for President and Vice-President of the United States, and supporting Libertarian Party and affiliate party candidates for political office; and entering into public information activities.

14. The LNC is authorized to charter affiliates throughout the United States. Properly chartered affiliates are licensed to use the LNC's federally registered trademarks. In 1972, the LNC chartered the Libertarian Party of Michigan (LPM), as an affiliate of the Libertarian Party. In January 2023, a group of individuals, Defendants, challenged the legitimate leadership of the officially recognized state-level affiliate of the Libertarian Party, the LPM. Plaintiff has continued to recognize the legitimate affiliate organization. However, Defendants, individually and as a group, have, without permission and without license, beginning in January 2023, willfully adopted, used and infringed one or both of the LNC's federally registered trademarks. Defendant's infringement and caused harm and damage to the LNC, including monetary harm, political harm and reputational harm to the LNC, the Libertarian Party and the

LPM, and dilution and disparagement of the Plaintiff's federally registered trademarks and the good will associated therewith. Defendants have used the LNC's federally registered marks to, among other things, solicit funds and to illegitimately suggest their activities and organization are affiliated with the Plaintiff without the Plaintiff's consent.

15. The governing arm of the LPM is the Libertarian Party of Michigan Executive Committee, Inc. ("LPMEC"). The directors of the LPMEC are defined in their Articles of Incorporation and Corporate Bylaws and are recognized as an affiliate by the Plaintiff, LNC. [see Exhibit 1, Articles of Incorporation and Bylaws of LPMEC,] The LPM has a legitimate LPMEC that is recognized and authorized by the LNC to use Plaintiff's Trademarks.

16. The following LPMEC positions have been illegitimately claimed by the following Defendants: Brungardt (Chair- originally) Saliba (Chair-current), Wolf (1st Vice-Chair), Stempfle (2nd Vice-Chair), Thornton-Canny (Treasurer), and Van Alstine (Secretary). The Defendants' claims of recognition are denied by the Plaintiff who recognizes a different set of officers as representing its Michigan affiliate and as authorized to use its trademarks. The LPMEC is authorized to charter sub-affiliates. Until April 7, 2023, two of those sub-affiliates were the Libertarian Party of West Michigan ("LPWM") and the Libertarian Party of Genesee County ("LPGC"). Defendant Buzuma is the Chair of LPWM, and Defendant Canny is the Chair of LPGC. Currently, neither of these organizations are recognized by Plaintiff LNC and are not authorized to use either Registered mark.

## THE TRADEMARKS

17. As part of its management of the Party, Plaintiff has registered a number of trademarks ("Libertarian Party Trademarks") with the USPTO that are associated and identified with its national and local political activities and affiliations.

18. Plaintiff's Trademarks include the federally registered trademark rights to:

- "Libertarian Party" Reg. No. 2,423,459 [Exhibit 2]. This mark has been in use in commerce at least since January of 1972.

- the "Libertarian" logo Reg. No. 6,037,046 [Exhibit 3]. This mark has been in use in commerce at least since 2015.

19. The Plaintiff currently and has continuously actively used the Libertarian Party Trademarks in commerce [Exhibit 4, screenshot of front page of Plaintiff's website LP.org].

20. Plaintiff grants the use of its Trademarks to its officially recognized state-level affiliates and their officially recognized sub-affiliates pursuant to Plaintiff's Bylaws [Exhibit 5, Libertarian Party Bylaws, specifically, Article 5.1].

21. On or about January 31, 2023, Defendants wrongfully claimed to be officers of the LPMEC and thus entitled to use the Plaintiff's Trademarks and to authorize sub-affiliates to do likewise.

22. On February 15, 2023, counsel for the representatives of the legitimate LPMEC recognized by the Plaintiff, sent a cease and desist letter to Defendant Brungardt, the original self proclaimed unrecognized chair of the Defendant Group, to immediately terminate any further misrepresentation as having any authority to govern the affairs of LPMEC and return their property [see Exhibit 6, cease and desist letter from Eric Doster, Esq. dated February 15, 2023, and Exhibit 7, response email from Defendant's former board member Scotty Boman dated February 15, 2023].

23. On February 16, 2023, Plaintiff sent a cease and desist letter to Defendant Brungardt, demanding an immediate termination to any representations of being the legitimate Michigan state affiliate of the Plaintiff and use of its Trademarks, including the designation

"Libertarian Party" and identifying as the recognized LPMEC at that time [see Exhibit 8, cease and desist letter from LNC Chair Angela McArdle dated February 16, 2023, and Exhibit 9, response from Brandon G. Warzybok dated February 8, 2023].

### FACTS COMMON TO DEFENDANTS BRUNGARDT, SALIBA, WOLF, STEMPFLE, THORNTON-CANNY, AND VAN ALSTINE

24. On January 25, 2023, the governing arm of the LPM, the LPMEC, directed Defendant Brungardt to add the Chair, Andrew Chadderdon, to the LPMEC's bank account at Comerica Bank. Brungardt ignored these instructions and on January 31, 2023, claimed that he was the LPMEC Chair. Subsequently, under the direction of the other Defendants, Brungardt added Defendants Saliba and Thornton-Canny to the account while claiming that these were rightful officers of the LPMEC who were entitled to use Plaintiff's Trademark "Libertarian Party" and to operate as an affiliate of Plaintiff. Thereafter, Chadderdon successfully appealed to Comerica's legal department to have his name added to the LPMEC bank account based upon documentation from LPMEC's legal counsel and from Plaintiff. However, on or about March 22, 2023, Defendants had the assets frozen after attempting to draw upon the account. Chadderdon made a second successful appeal after which Comerica provided him with cashier's checks for the balance and closed the account. However, on or about April 28, 2023, Chadderdon was notified that an Interpleader/Declaratory action (Case No. 23-557-CB Washtenaw County Circuit Court, State of Michigan) was filed by Comerica due to the continued attempts of Defendants to secure the funds properly belonging to LPMEC. Lack of access to funds has damaged the LPMEC and Plaintiff LNC.

25. On or about April 20, 2023, Thornton-Canny filed a campaign finance report with the state of Michigan purporting to be on behalf of the legitimate LPMEC entitled to use the

Plaintiff's Trademark of "Libertarian Party" [see Exhibit 9, screenshot of Michigan campaign finance filing dated April 20, 2023].

26. On February 5, 2023, and March 19, 2023, under color of being the legitimate Treasurer of LPMEC, and thus falsely authorized to use the Plaintiff's Trademark of "Libertarian Party," Thornton-Canny filed false amended Statements of Organization with the Federal Elections Commission ("FEC") claiming a change in Treasurer, website, and address. Under 52 U.S.C. §§ 30101-46, this is an improper attempt to be recognized as a state-level affiliate of a recognized national party. As claimed by Thornton-Canny in the filings, an organization must be recognized as part of the official structure of said national political party, however, Thornton-Canny was fully aware that the organization referenced in her filing did not have official recognition from Plaintiff LNC [see Composite Exhibit 11, Amended Statements of Organization dated February 5, 2023, and March 19, 2023, filed by Angela Canny Thornton to the FEC; and Exhibit 12, letter from the FEC to the LNC's counsel dated November 17, 2016]. These false filings have harmed the Libertarian Party and may adversely affect the ability of the Libertarian Party to put its 2024 Presidential and Vice-Presidential candidate on the ballot in Michigan.

27. On February 3, 2023, Defendants Brungardt, Saliba, Wolf, Stempfle, Thornton-Canny and Van Alstine, registered a website (michiganlp.net) using the Plaintiff's Trademark of "Libertarian Party" which was further deceptively similar to the website of the recognized LPMEC (michiganlp.org) [see Exhibit 13, screenshot of WhoIs information for the michiganlp.net domain] and attempted to have the legitimate website taken down by its hosting provider, Domain IT. Until such time as this trademark suit is resolved, the legitimate LPMEC is locked out of making any domain transfers or other fundamental identity changes to its

website due to this fraudulent and bad faith take-down effort as per a phone call from Domain IT made to Mr. Chadderdon on or about March 7, 2023.

28. On multiple dates, including February 7, 2023, Defendants filed documentation with the Michigan Corporations registry ("LARA") claiming to be the legitimate directors of LPMEC and entitled to the use of the Plaintiff's Trademark of "Libertarian Party" [see Exhibit 14, LARA filing dated February 7, 2023].

29. On or about March 3, 2023, Plaintiff sent an email to its membership in Michigan alerting them to the identity of the correct website and contact email [see Exhibit 15, email from Plaintiff to Michigan membership dated March 3, 2023].

30. In response and on the same day, Defendants sent out an email to the Michigan membership fraudulently "spoofing" the email address of the recognized affiliate identified by the Plaintiff and using Plaintiff's Trademark of "Libertarian Party" in an infringing manner [see Composite Exhibit 16, email from Defendants dated March 3, 2023, and screenshot of email header showing spoofed sender]. They have sent numerous other emails representing themselves as the Michigan affiliate and using Plaintiff's Trademark of "Libertarian Party" without engaging in spoofing.

31. Defendants have set up several social media accounts falsely holding themselves out to be representatives of the affiliated LPMEC and using Plaintiff's Trademark of "Libertarian Party" [see Composite Exhibit 17, depicting Twitter and Facebook pages infringing upon Plaintiff's Trademark].

32. Defendants have further advertised numerous meetings, including an alleged annual convention [see previously referenced Exhibit 16], representing themselves as the Michigan affiliate and infringing upon Plaintiff's Trademark.

33. Defendants have published Bylaws upon their website explicitly claiming that they are operating as an affiliate of the Plaintiff and using the Plaintiff's Trademark throughout [see Composite Exhibit 18, screenshots of Defendants' website using Plaintiff's Trademark including the explicit claim of affiliation with Plaintiff].

34. Defendants have taken money from individuals as "membership dues" using their claims of false association with the Plaintiff and took receipt of other funds from individuals related thereto and is actively soliciting same [see Exhibit 19, donation page from Defendants' website].

35. Defendants and their associates have made it clear that their intent is to disrupt, dilute, and defame the Trademark and good will of the Plaintiff and ignore any demands for cessation. They have further made harassing and potentially defamatory claims to and about the attorney of the affiliated LPMEC [see Composite Exhibit 20, screenshot of post from Defendant Saliba joking about burning any cease and desist letters, screenshot of post from Defendant Canny describing damaging Plaintiff's brand as a "Holy Quest," picture of Defendants' fellow board member Brian Ellison disrupting a legitimate board meeting by stripping off of his clothes, and screenshot of post by Defendants' former fellow board member Scotty Boman accusing attorney of malpractice].

36. Plaintiff anticipates receiving complaints regarding the same – wherein individuals contact Plaintiff to inquire about non-existent memberships in the LNC or the "Libertarian Party," and/or the LPM and are upset that they've paid money but have no membership with the Plaintiff or have given personal and private contact information in reliance upon the claim of association with the Plaintiff and use of Plaintiff's Trademark.

### FACTS RELATING TO DEFENDANT CANNY

37. Defendant Canny is the chair of LPGC, a formerly recognized affiliate of the LPMEC previously entitled to use Plaintiffs' trademarks. Canny had been notified as of April 7, 2023, that LPGC's affiliation would be revoked if the organization did not meet certain conditions which were not met [see Exhibit 21, email from Andrew Chadderdon to LPGC notifying of intent to disaffiliate and to cease further infringing activities].

38. Defendant Canny operates a website using Plaintiff's Trademarks without authorization [see Exhibit 22, screenshot of LPGC website depicting use of both of Plaintiff's Trademarks].

39. Further, Canny has used LPGC in order to process money in assistance of fundraising efforts in furtherance of the infringing activities described above [see Exhibit 21 referenced previously, and Exhibit 23, screenshot of donation page on michiganlp.net noting the LPGC as the processor for donations].

### FACTS RELATING TO DEFENDANT BUZUMA

40. Defendant Buzuma is the chair of LPWM, a formerly recognized affiliate of the LPMEC previously entitled to use Plaintiffs' trademarks. Buzuma had been notified as of April 7, 2023, that LPGC's affiliation would be revoked if the organization did not meet certain conditions which were not met [see Exhibit 24, email from Andrew Chadderdon to LPWM notifying of intent to disaffiliate].

41. Defendant Buzuma operates a website using Plaintiff's Trademarks without authorization [see Exhibit 25, screenshot of LPWM website depicting use of both of Plaintiff's Trademarks].

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

42. Plaintiff restates herein and incorporates by reference all of the above paragraphs.

43. Plaintiff LNC is the exclusive owner and registrant of Plaintiff's Trademarks, Reg. No. 2,423,459 and Reg. No. 6,037,046 and to all common law rights thereto and associated therewith.

44. Plaintiff's registrations of the Trademarks at the USPTO are valid and active, and in full force and effect.

45. Plaintiff has used, and continues to use, its registered Trademarks in commerce.

46. Defendants have, without the consent of the Plaintiff, used the Trademarks, reproductions of the Trademarks, counterfeits of the Trademarks, copies of the Trademarks, and/or colorable imitations of the Trademarks in commerce in a manner that is confusing and/or confusingly similar.

47. Defendants' Infringing uses have been in connection with repeated and continuous distribution, advertising, registration, and publication of information and materials containing references to "Libertarian Party" and as far as Defendants Canny and Buzuma, using the Libertarian Party "torch eagle" logo.

48. Defendants' Infringing uses of Plaintiff's Trademarks occurred, and occur, in related commercial fields for related commercial services (*e.g.*, political party communications, political party activities, political press activity, political candidate screenings, official filing and registrations and endorsements).

49. Defendants' Infringing uses of Plaintiff's Trademarks further include Defendants soliciting funds from individuals – by misleading and deceiving those individuals as to

Defendants' relationship, affiliation or sponsorship with or by Plaintiff, by using Plaintiff's Trademarks and in other manners.

50. Defendants' Infringing uses of Plaintiff's Trademarks – especially when considered in light of their knowing and defiant continued uses – have been intentional, to create a false impression of affiliation, authorization or sponsorship.

51. Defendants' Infringing uses of Plaintiff's Trademarks – especially when considered in light of their knowing and defiant continued uses – have been intentional, to harm Plaintiff's marks, to harm Plaintiff's good will and to dilute Plaintiff's marks.

52. Defendants' Infringing uses have therefore caused confusion and mistake, and are likely to continue to cause confusion or mistake as Defendants' association, affiliation or relationship with Plaintiff. Such confusion or mistake is probable, given the relatedness of Defendants' Infringing Uses.

53. Defendants' Infringing uses constitute trademark infringement and trademark dilution in violation of the Lanham act and 15 U.S.C.

54. Defendants' infringing activities and willful conduct in relation thereto, constitute trademark infringement in violation of 15 U.S.C. § 1114(1) and the Lanham Act.

55. Plaintiff has been, and will continue to be harmed by Defendants' Infringing activities. Defendants' conduct has irreparably harmed Plaintiff, and will continue to do so unless enjoined by this Court.

56. As a result of Defendants' conduct, Plaintiff has been harmed and is entitled to damages, including, but not limited to, actual damages, statutory damages, treble damages, and corrective advertising damages and a temporary and permanent injunction.

57. The harm caused to Plaintiff's business, goodwill, reputation, trademarks and

finances are a direct and proximate result of Defendants' intentional, deliberate, and willful use of Plaintiff's Trademarks in an infringing manner.

58. The intentional, deliberate, and willful actions of Defendants render this an exceptional case, entitling Plaintiff to enhanced damages and an award of attorney's fees and costs associated with the action pursuant to 15 U.S.C. § 1117(a).

59. The damage caused to Plaintiff by Defendants cannot be fully measured or compensated for in economic terms. Such irreparable harm will continue unless Defendants are enjoined from such conduct.

## COUNT II
## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)(1)(A)

60. Plaintiff herein restates and incorporates by reference all paragraphs above.

61. Defendants have, without the consent of the Plaintiff, used the Libertarian Trademarks – including, but not limited to, words, terms, names, symbols, and combinations thereof.

62. Defendants have, without the consent of the Plaintiff, used the Libertarian Trademarks in false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact, regarding the Trademarks.

63. Defendants' unlawful usage of Plaintiff's Trademarks has caused and is likely to continue to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants or their activities with the Plaintiff.

64. Defendants' unlawful usage of Plaintiff's Trademarks is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their commercial activities by the Plaintiff.

65. Defendants' unlawful usage of Plaintiff's Trademarks has caused confusion, mistake and deception as to the origin, sponsorship, or approval of their commercial activities by the Plaintiff.

66. Defendants' Infringing Uses of Plaintiff's Trademarks include Defendants receiving money from individuals – by misleading and deceiving those individuals as to Defendants' relationship, affiliation or sponsorship with or by Plaintiff, using Plaintiff's Trademarks.

67. Defendants' unlawful usage of Plaintiff's Trademarks is willful and deliberate.

68. Defendants have acted purposefully to create a false or misleading association in order to trade off of the extensive goodwill that Plaintiff's Trademarks have established.

69. Defendants' unlawful usage of Plaintiff's Trademarks and willful conduct in relation thereto constitute false designation of origin, false descriptions, and dilution of the Trademarks in violation of 15 U.S.C. § 1125(a)(1)(A).

70. Plaintiff has been, and will continue harmed by Defendants' unlawful usage of Plaintiff's Trademarks. Defendants' conduct has irreparably harmed Plaintiff, and will continue to do so unless enjoined by this Court.

71. As a result of Defendants' unlawful usage of Plaintiff's Trademarks, Plaintiff has been harmed and is entitled to damages, including but not limited to, actual damages, statutory damages, treble damages, and corrective advertising damages.

72. The harm caused to Plaintiff's business, goodwill, reputation, and finances are a direct and proximate result of Defendants' intentional, deliberate, and willful misuse of Plaintiff's Trademarks in an unlawful manner.

73. The intentional, deliberate, and willful actions of Defendants render this an

exceptional case, entitling Plaintiff to enhanced damages and an award of attorney's fees and costs associated with the action pursuant to 15 U.S.C. § 1117(a).

74. The damage caused to Plaintiff by Defendants cannot be fully measured or compensated for in economic terms. Such irreparable harm will continue unless Defendants are enjoined from such conduct.

## COUNT III
## FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B)

75. Plaintiff herein restates and incorporates by reference all of the above paragraphs.

76. Defendants have, without the consent of the Plaintiff, used the Trademarks – including, but not limited to, words, terms, names, symbols, and combinations thereof.

77. Defendants have, without the consent of the Plaintiff, used the Trademarks in false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact, regarding the Trademarks.

78. Defendants have, without the consent of the Plaintiff, used the Trademarks in commercial advertising and promotion.

79. Defendants' unlawful usage of Plaintiff's Trademarks in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of their commercial activities.

89. Defendants' unlawful usage of Plaintiff's Trademarks has caused confusion, mistake and deception as to the origin, sponsorship, or approval of their commercial activities by the Plaintiff.

81. Defendants' Infringing uses of Plaintiff's Trademarks include Defendants receiving money from individuals – by misleading and deceiving those individuals as to

Defendants' relationship, affiliation or sponsorship with or by Plaintiff, using Plaintiff's Trademarks.

82. Defendants' unlawful usage of Plaintiff's Trademarks is willful and deliberate.

83. Defendants have acted purposefully to falsely advertise and promote their activities in order to trade off of the extensive goodwill that Plaintiff's Trademarks have established.

84. Defendants' unlawful usage of Plaintiff's Trademarks and willful conduct in relation thereto constitute false advertising of the Trademarks in violation of 15 U.S.C. § 1125(a)(1)(B).

85. Plaintiff has been, and will continue harmed by Defendants' unlawful usage of Plaintiff's Trademarks. Defendants' conduct has irreparably harmed Plaintiff, and will continue to do so unless enjoined by this Court.

86. As a result of Defendants' unlawful usage of Plaintiff's Trademarks, Plaintiff has been harmed and is entitled to damages, including but not limited to, actual damages, statutory damages, treble damages, and corrective advertising damages.

87. The harm caused to Plaintiff's business, goodwill, reputation, and finances are a direct and proximate result of Defendants' intentional, deliberate, and willful misuse of Plaintiff's Trademarks in an unlawful manner.

88. The intentional, deliberate, and willful actions of Defendants render this an exceptional case, entitling Plaintiff to enhanced damages and an award of attorney's fees and costs associated with the action pursuant to 15 U.S.C. § 1117(a).

89. The damage caused to Plaintiff by Defendants cannot be fully measured or compensated for in economic terms. Such irreparable harm will continue unless Defendants are

enjoined from such conduct.

## COUNT IV
## INJUNCTIVE RELIEF UNDER 15 U.S.C. § 1116(a)

90. Plaintiff herein restates and incorporates by reference all paragraphs.

91. Plaintiff has shown, herein, that Defendants has unlawfully used Plaintiff's Trademarks in violation of 15 U.S.C. §§ 1114, 1125(a)(1)(A) and 1125(a)(1)(B).

92. Plaintiff has shown, herein, that Defendants' infringement of Plaintiff's Trademarks is willful, deliberate and ongoing.

93. Plaintiff has shown, herein, that Plaintiff has been, and will continue to be, harmed by Defendants' infringement of Plaintiff's Trademarks.

94. Plaintiff has shown, herein, that Plaintiff has been irreparably harmed by Defendants' infringement of Plaintiff's Trademark, and that Defendants will continue to do so unless enjoined by this Court.

95. The damages caused to Plaintiff by Defendants cannot be fully measured or compensated for in economic terms. Such irreparable harm will continue unless Defendants are enjoined from such conduct.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

A preliminary injunction enjoining Defendants and others acting in concert with Defendants from infringing on plaintiffs trademarks and from using, advertising or publicizing

any information that includes or refers to Plaintiff's Trademarks or any colorable imitation thereof;

A judgment in favor of Plaintiff that Defendants violated 15 U.S.C. § 1114;

A judgment in favor of Plaintiff that Defendants violated 15 U.S.C. § 1125(a)(1)(A);

A judgment in favor of Plaintiff that Defendants violated 15 U.S.C. § 1125(a)(1)(B);

A judgment in favor of Plaintiff that Defendants intentionally violated 15 U.S.C. § 1114;

A judgment in favor of Plaintiff that Defendants intentionally violated 15 U.S.C. § 1125(a)(1)(A);

A judgment in favor of Plaintiff that Defendants intentionally violated 15 U.S.C. § 1125(a)(1)(B);

A judgement in favor of Plaintiff that Defendants have violated the Federal trademark rights of Plaintiff.

A judgement in favor of Plaintiff that Defendants have violated Plaintiffs' Lanham Act rights.

A judgment and order requiring Defendants to pay Plaintiff monetary damages – in an amount to be determined at trial – in addition to awarding Plaintiff's' attorney's fees, costs, expenses, enhanced and/or exemplary damages, and pre-judgment and post-judgment interest;

A permanent injunction enjoining Defendants and others acting in concert with Defendants from infringing on plaintiffs trademarks and from using, advertising or publicizing any information that includes or refers to Plaintiff's Trademarks or any colorable imitation thereof; and

Any and all other relief to which Plaintiff may show itself to be entitled.

May 5, 2023

Respectfully Submitted,

  /s/ Joseph J. Zito
Joseph J. Zito
FRESH IP PLC
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
jzito@steinip.com
(202) 466-3500
**ATTORNEYS FOR PLAINTIFF LIBERTARIAN NATIONAL COMMITTEE**