IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **LIBERTARIAN NATIONAL COMMITTEE, INC.,** <br><br> *Plaintiff,* <br><br> v. <br><br> **MIKE SALIBA, RAFAEL WOLF, GREG STEMPFLE, ANGELA THORNTON-CANNY, JAMI VAN ALSTINE, MARY BUZUMA, DAVID CANNY, and JOSEPH BRUNGARDT,** <br><br> *Defendants.* | Case No. 23-cv-11074 <br><br> Hon. Judith E. Levy |

## DECLARATION OF MICHAEL SALIBA

Under 28 U.S.C. § 1746, I, Michael (Mike) Saliba, declare as follows under penalty of perjury:

1. I am over the age of 18, of sound mind, and otherwise competent to provide this declaration.

2. I am a member of the Libertarian Party of Michigan (LPM) and of the Libertarian Party. I have a lifetime membership in the latter entity.

3. I currently serve on the LPM executive committee as its chair, which is the highest leadership position in the LPM. I became acting chair of the LPM in February 2023 after the resignation of the former acting chair, Joe Brungardt. I was

— 1 —

then elected to continue serving in the position of chair at LPM's April 2023 convention in Lansing.

4. I was a member of the LPM executive committee throughout the summer of 2022 and am personally aware of the events that lead to Mr. Andrew Chadderdon's ascension to, and ultimate removal from, the position of LPM acting chair.

5. In the early summer of 2022, the two highest ranking officers of the LPM resigned from their leadership positions just weeks before the party's candidate nominating convention in Holland, Michigan.

6. In a letter explaining his decision, former-Chair Tim Yow cited hostility from Mr. Chadderdon, who was the second vice chair of LPM at that time. Mr. Yow also cited concern with the ideology of the political caucus to which Mr. Chadderdon belongs, which is known as the Libertarian Party Mises Caucus. A true and accurate copy of Mr. Yow's letter is included as Exhibit 20 to the *Defendants' Brief in Support of Response to Motion for Preliminary Injunction* (Response Brief) in the above-captioned case.

7. As a result of the resignations, Mr. Chadderdon ascended to the position of acting chair pursuant to the LPM bylaws.

8. Members of the LPM executive committee, including myself, were concerned that Mr. Chadderdon would not be able to effectively lead the party

because of his poor relationship with party members and his poor performance in his prior role of LPM political director.

9. In light of these concerns, executive committee members notified Mr. Chadderdon in mid-June that they intended to call a vote-of-no confidence to remove him from the executive committee during the July 9 convention.

10. Executive committee members also indicated their intent to conduct elections to fill the vacancies on the executive committee during the convention and asked that written notices of the elections be sent to all party members.

11. Mr. Chadderdon openly opposed these efforts and attempted to thwart them. Among other things, he refused to send notices of the elections as requested, so that he could then argue that the elections were improper.

12. In his opening comments at the convention on July 9, Mr. Chadderdon made clear that he had no intention to allow votes on his removal from the executive committee or on the filling of executive committee vacancies. Instead, he proposed a convention agenda that did not include either of those items. A videorecording of the convention is available at the following link: www.youtube.com/watch?v=0Z-VtaWAcHA&t=270s.

13. When a motion was made from the floor to approve a substitute agenda that included them, Mr. Chadderdon ruled the motion out of order on the grounds that notice of the intent to fill the vacancies had not been given.

14. Immediately thereafter, a subsequent motion was made to appeal Mr. Chadderdon's ruling to the full assembly on the grounds that the party customarily allowed items to be added to convention agendas by motion from the floor.

15. Mr. Chadderdon then ruled that motion out of order too, citing a provision of *Robert's Rules of Order* that prohibits the introduction of "frivolous or absurd" motions.

16. The delegates were outraged by Mr. Chadderdon's second ruling and responded by moving to replace him as convention chair. That motion passed by a standing vote.

17. Under the leadership of the replacement chair, Joe Brungardt, the convention delegates then proceeded to remove Mr. Chadderdon from the executive committee through a vote-of-no confidence and to fill the vacancies on the executive committee. As previously noted, I was elected to the position of first vice chair.

18. Following the convention, the newly selected executive committee met and conducted its work without objection for four months.

19. Then, in mid-November, Mr. Chadderdon sent a letter to the LPM judicial committee asking it to overturn his removal from the executive committee and to void the results of the officer elections conducted at the convention.

20. In support of those requests, Mr. Chadderdon alleged procedural error based on a novel theory that the July convention was a "special meeting" for

— 4 —

purposes of the bylaws and *Robert's Rules* and that, as a result, business could only be conducted if it was specifically referenced in the written document calling the meeting. Despite the extensive discussion of procedural issues during the July 9th convention and the executive committee meetings leading up to it, no one (including Mr. Chadderdon) had previously suggested this interpretation of the party's rules. Moreover, in my time as a member of LPM, I am aware of other incidents in which business items were considered at candidate nominating conventions that were not specifically referenced in the call to convention.

21. In December 2022, the LPM judicial committee, which consisted of three Mises Caucus members, considered Mr. Chadderdon's request and ruled in his favor. The judicial committee's opinion specifically indicated that the executive committee reverted back to the composition as it existed immediately prior to the July convention.

22. The release of the judicial committee opinion created substantial confusion within the party, because, to my knowledge, the judicial committee had never claimed the power to overrule decisions made by convention delegates. I have discussed this issue with individuals who have been active members of the LMP since for decades, and none of them were aware of any precedent for this type of action in the many years that the judicial committee had been in existence. Further, because the judicial committee is a "committee," my understanding is that its role, as defined

— 5 —

by section 50.4 of *Robert's Rules of Order*, is to "report its findings or recommendations to the assembly," not to order self-executing remedies.

23. Accordingly, while some members of the elected executive committee were initially under the impression that they had been removed from their committee seats, they eventually concluded that was not the case. Rather, other members of the executive committee and I determined that we remained in our positions on the executive committee unless and until the party's members adopted the recommendations of the judicial committee and removed us from office.

24. Meanwhile, Mr. Chadderdon began acting as if the judicial committee's opinion was self-executing.

25. Sometime in early 2023, he began conducting so-called "executive committee" meetings of his own with a committee consisting of other members of the Mises Caucus who threw their support behind him. As a result of these actions, a contentious governance dispute emerged within the party, dividing its membership into two distinct factions.

26. Since becoming acting chair, and then later chair, of the LPM, I have made a concerted effort to inform the full LPM membership regarding the nature of the governance dispute, and to provide periodic updates on notable developments. A sampling of the email communications I have sent to the LPM membership are included as Exhibit 9 to the Response Brief. As the emails show, I have been honest

and transparent that my position as chair is disputed, and that the LNC supports Mr. Chadderdon's claim to the chairmanship.

27. In my role as LPM chair, I have been in contact with numerous Libertarian Party members from outside of Michigan who have informed me that they support the stand that I and other elected members of the LPM executive committee have taken against Mr. Chadderdon and the LNC. In my opinion, this out-of-state support is related to the fact that there are similar intraparty disputes that have arisen within other state-level affiliates since members of the Mises Caucus won a majority of the seats on the LNC at the 2022 national convention. Some of these disputes are described in the *Daily Beast* article attached as Exhibit 12 to the Response Brief, and they are well-known to those who closely follow Libertarian Party politics.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **7·7·23**



Michael Saliba