IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LIBERTARIAN NATIONAL COMMITTEE, INC., <br><br>Plaintiff,<br>v.<br><br>MIKE SALIBA, et. al.<br><br>Defendants | CIVIL ACTION NO.:<br><br>23-cv-11074<br><br>JURY TRIAL DEMANDED |

## SECOND DECLARATION OF ANDREW CHADDERDON

Under 28 U.S.C. §1746, I, Andrew Chadderdon, declare as follows, under penalty of perjury:

1. I am over the age of 18, of sound mind, and otherwise competent to provide this declaration under penalty of perjury.

2. I am the Chair for the Libertarian Party of Michigan (LPM) which is the recognized state-level affiliate in Michigan by the Libertarian National Committee (LNC) on behalf of the national Libertarian Party (NLP) and the President of the Libertarian Party of Michigan Executive Committee, Inc. (LPMEC). I was re-elected to these positions at the LPM's annual convention on July 15, 2023.

1

**EXHIBIT 41**

3. The following exhibits are true and accurate copies of the purported documents:

- Exhibit 45, Answer and Affirmative Defenses of Andrew Chadderdon in Case No. 23-557-CB Washtenaw County Circuit Court, State of Michigan

- Exhibit 46, Initial Disclosures of Andrew Chadderdon in Case No. 23-557-CB Washtenaw County Circuit Court, State of Michigan

- Exhibit 47, Parliamentary opinion of Jonathan M. Jacobs dated November 29, 2022, with supplement dated December 23, 2022

- Exhibit 48, LARA print-out from April 28, 2023

- Exhibit 49, LARA print-out from June 22, 2023

- Exhibit 50, Parliamentary opinion of Jonathan M. Jacobs dated July 17, 2023, with attached referenced articles from the *National Parliamentarian*

- Exhibit 51, Meeting minutes of the LPMEC meeting via Zoom January 6, 2023

- Exhibit 52, Emails regarding petition for special convention dated January 3-4, 2023

- Exhibit 53, Email from Josh Martin dated December 21, 2022

- Exhibit 54, LPM Communications Policy

2

- Exhibit 55, Email from the illegitimate LEC dated June 7, 2023
- Exhibit 56, mail from Defendant Saliba dated June 15, 2023
- Exhibit 57, Facebook post evidencing member confusion
- Exhibit 58, Email from Defendant Saliba dated June 16, 2023
- Exhibit 66, Screenshot of Google search results for "Libertarian Party of Michigan"
- Exhibit 67, Submission of Andrew Chadderdon to the Michigan Judicial Committee

4. There were multiple mis-statements and substantive omissions of fact in Defendants' Brief in Support of their Response to Motion for Preliminary Injunction including the following:

    a) Defendants assert that I made no objections to the motion of no confidence and the actions of filling vacant positions at the July 2022 nominating convention. [PageID.623, 625] Repeated objections to violations of the bylaws which create a breach of a continuing nature are not necessary. In fact, since actions taken in violation of the bylaws or in violation of absentee rights are void *ab initio*, it is not necessary to raise an objection at all, although I did (RONR 12th ed. 23:5-6, 23:9). [*see* Exhibit 27, PageID.527-539 and Exhibit 47, Opinion of Jonathan M. Jacobs dated November 29, 2022, with supplement dated December 23, 2022] However,

3

as conceded by Defendants, I did in fact rule such actions out of order at the time they were attempted to be added to the agenda at the nominating convention. [PageID.622-623]

    b)    Defendants assert that I "refused" to send out a notice for a vote of no confidence against me and the filling of vacancies to be heard at the July 2022 nominating convention. [PageID.622-622] That is misleading in multiple ways. The LPM Bylaws Article VI.4(2) and Article VI.4(4) require 30 days' notice to membership and 60 days' notice to the local affiliates respectively for items to be added to the agenda of a non-regular convention, and these items were requested past that deadline, so sending out notice would have been in vain and deceptive. [*see* Exhibit 26 at PageID.526 and Exhibit 47, Parliamentary opinion of Jonathan M. Jacobs dated November 29, 2022, with supplement dated December 23, 2022]. Further, the LPM Communications Policy makes it clear that the Communications Director can be directed to send out communications to the party membership, not just by the Chair, but by the entire LEC (*i.e.,* executive committee) upon motion. [*see* Exhibit 54, LPM Communications Policy, Section A] The Defendants never made such a motion. Further, Defendant Canny ultimately sent out the notice on his own and with different motion language than what

was ultimately moved and voided. [*see* Exhibit 67, Submission of Andrew Chadderdon to the Michigan Judicial Committee]

  c)  Defendants manufacture controversy out of the inevitable reality of factions within political parties, particularly in an attempt to cast aspersions on the members of the LPM Judicial Committee. [*see* Defendants' Exhibit 5, PageID.675 ¶21]  However, Defendants fail to mention that the Judicial Committee was elected by the same convention delegates that elected the prior Chair and First Vice-Chair whose rash resignations started this chain of events, and thus were the choice of the delegates that they claim to honor when expedient.  Further, as admitted by the Defendants, the deletion of a particular platform statement on bigotry at the 2023 National Libertarian Convention motivated these resignations, but at the illegitimate convention called by the Defendants, that very same language failed [*see* Defendant's Exhibit 8, PageID.711], without even passing the stronger anti-bigotry language passed at the 2023 National Libertarian Convention calling for the defense of the rights of all people, regardless of their race, ethnicity, or any other aspect of their identity.  In fact, members at that convention defended the deletion of the same language deleted at national calling into question the entire character assassination that appears to be part of the defense.

5

d)      Defendants state that "[S]ometime in early 2023, he [Andrew Chadderdon] began conducting so-called "executive committee" meetings of his own with a committee consisting of his political allies." [PageID.626] However, the vagueness of this statement is misleading as it implies that the Defendants were ignorant of the dates of such meetings and is an outright misrepresentation that it solely consisted of my political allies.  Defendants Brungardt, Canny, and Saliba were all present at these meetings as members of this executive eommittee on January 6, 2023, and January 25, 2023. [*see* Exhibit 51, Meeting minutes of the LPMEC meeting via Zoom January 6, 2023, and Exhibit 28, PageID.540-553] In fact, all of the above Defendants participated on this executive committee for about 90 days prior to unilaterally deciding that the LPM Judicial Committee decision was not binding upon them.

e)      Defendants completely omit the fact that after the LPM Judicial Committee decision was issued, they petitioned the executive committee for a Special Convention to be called to properly consider the overturned items which is the proper course of action under the LPM Bylaws. [*see* Exhibit 52, Emails regarding petition for special convention dated January 3-4, 2023]  In fact, Defendants Brungardt, Canny, and Saliba all participated in the meetings at which this petition for a special convention was considered and

6

the requested special convention set for April 1, 2023, in Wixom, Michigan. [*see* Exhibit 51, Meeting minutes of the LPMEC meeting via Zoom January 6, 2023, and Exhibit 28, PageID.540-553] Instead of attending the convention which they had requested which would have resolved this issue, the Defendants instead decided to disregard the LPM Judicial Committee decision, form a rogue executive committee, and call a competing convention for the exact same date of April 1, 2023, but with a location of Lansing, Michigan. [*see* Exhibit 30, PageID.556-557]

    f)     Defendants routinely mention numbers or support of members. [PageID.623, 628, 643, 674] First, organizational bylaws cannot be suspended "no matter how large the vote in favor of doing so or how inconvenient the rule in question may be" (RONR 12th ed. 25:7), However, considering the constant misdirection and misinformation spread by the Defendants and the evidence of confusion at their alleged convention [*see* Exhibit 39, PageID.593, 597 at ¶3(i) and 14 referencing transcript of Convention video YouTube video at https://youtu.be/p1TkFtLwyNg beginning at timestamp 1:21:20], there is no objective determination of support numbers or how many people have simply stayed home or away from the Party out of disgust for this situation. The Defendants attempt to downplay the confusion of the member speaking in the video by claiming

7

that Defendant Saliba immediately corrected that member. However, a review of the video shows the opposite, and in fact, shows that Defendant Saliba was confused as to the correct answer to the member's questions about whether or not she was a member of the Michigan affiliate or not in the eyes of the NLP and stutters as he says, "it's... it's.... complicated" and her questions were cut off by another member moving to end debate. However, even if his assertion was correct, that does not dispel the fact that their actions have in fact caused confusion, and allegedly curing it with one member, does not cure it with any number of others. Further, his "cure" only creates more confusion since he acknowledged that the LNC does not recognize his board, and thus, he cannot claim to be the President of the LPMEC as its governing documents identify the entity as the one recognized by the NLP. [*see* Exhibit 1, PageID. 433, 440] The LPM and LPMEC are organizations operating under bylaws and rules, a fact they acknowledge when it comes to the NLP, even describing organizational bylaws as a "contractual agreement between the organization and its members." [PageID.636]

  g) Defendant Saliba claims that the LPM had never claimed any authority in the past to overrule decisions made by convention delegates without providing any evidence that such a question had ever been presented

8

and refused. [*see* Defendants' Exhibit 5, PageID.675-676 ¶22] Further, the converse is true. There is no evidence that any past LPMEC has ever claimed that the Judicial Committee was merely advisory—which would of course render their role illusory since in most cases it is the LPMEC itself who would be the subject of an appeal alleging a violation of the Bylaws. In any event, even if such evidence existed, past violative actions are not binding precedent, only the Bylaws control, and the Bylaws explicitly vest this **decision** in the Judicial Committee (emphasis added): "The Judicial Committee **shall decide** cases involving alleged violations of these bylaws or resolutions." [*see* Exhibit 26, PageID.520-521 and Exhibit 50, Parliamentary opinion of Jonathan M. Jacobs dated July 17, 2023, with attached referenced articles from the *National Parliamentarian*]

    h)    Defendant Saliba asserts that my appeal was sheerly on procedural matters and that these arguments had not been previously mentioned. [*see* Defendants' Exhibit 5, PageID.674-675 ¶20] Both of these statements are incorrect. Notice requirements are critical protections of absentee rights (RONR 12th ed. 2:13, 23:6(e), 25:7, 25:10-11 56:20). [*see also* Convention YouTube video at https://youtu.be/0Z-VtaWAcHA beginning about timestamp 19:30 through 26:35]

9

i) Defendant Saliba omits the fact that I explicitly gave a reason for my delay to appeal the events of the July 2022 to the LPM Judicial Committee, that being that I did not wish to distract from the campaigns of the candidates for public office nominated at that convention, a fact of which I also personally informed him of at that convention. [*see* Defendants' Exhibit 5, PageID.674 ¶18] I further was in consultation with a parliamentarian during that time to prepare my appeal and understand my rights. On the contrary, Defendants complied with decision of the LPM Judicial Committee nearly up to the day before unilaterally deciding that they could wantonly disregard that decision which was against the advice of their own retained parliamentarian Josh Martin, the LPM Bylaws, the LPMEC Bylaws, and in contradiction to the Defendants' implication that my goal was to split the Party [PageID.624-626], to wit (highlighting added):

**Statement from me to Mr. Martin:** *My goal is to pursue the question beyond the [Judicial Committee] decision was incorrect and my concern is for a potential fracture of the organization that I hope to avoid.*

**Response from Mr. Martin to me:** *I think there is no doubt, given the extensive discussion on this topic, that the rules in question are ambiguous and therefore subject to interpretation. As a parliamentarian, my role is*

10

*simply to provide advice. The organization is the ultimate judge on these matters, and the organization's interpretation on this matter is the last word and is "correct" as a parliamentary matter, even although that decision may not agree with my advice. ==If I were the parliamentarian for this organization (or a member), I would respectfully submit to the organization's interpretation== (even if I may disagree with it) and view it as a more fruitful use of my time to suggest amendments to clarify the meaning of the bylaws, rather than continuing to argue over the meaning of ambiguous rules. You are free to pass this advice along, to the extent you think it will be of assistance.*

[*see* Exhibit 53, Email from Josh Martin dated December 21, 2022]

5. Defendants claim that a disclaimer on their donation page vitiates any potential confusion. [PageID.630] This is both untrue and misleading as donations were not the only way in which Defendants caused and are still causing public confusion. [*see* Exhibit 39, PageID.592-595 ¶3 with subparts] Further, cash and mail donations are permitted, and there has been no evidence submitted that such future donors would be aware of any such disclaimer (which does not disclose they are not the official recognized Michigan affiliate). Additionally, since that time, the following additional actions by the Defendants causing chaos and confusion have taken place:

11

    a)    The Defendants filed changes removing the legitimate LPMEC and listing themselves as the directors of the corporation with the Michigan Licensing and Regulatory Agency (LARA) **after** the filing of the Plaintiff's Motion for Preliminary Injunction despite the fact that the LPMEC Bylaws and Articles of Incorporation require that the corporation be the recognized affiliate of the NLP (which recognition the Defendants do not enjoy).[1] [*see* Exhibit 1, PageID.433, 440, Exhibit 48, LARA print-out from April 28, 2023, and Exhibit 49, LARA print-out from June 22, 2023]

    b)    The illegitimate board sent an email on June 7, 2023, to the Party membership entitled "Official communication from the Libertarian Party of Michigan" advertising an event for a legitimate local affiliate "Huron-Raisin Libertarian Party[2]," claiming said entity as *their* affiliated organization in a complete blurring of any line between the recognized NLP Michigan affiliate and their organization since only the recognized NLP Michigan affiliate is authorized to charter sub-affiliates entitled to use the NLP's Trademark of "Libertarian Party" and thus implying an affiliation and

---

[1] It is further noted that Defendants Saliba, Brungardt, and Canny participated in the meeting on January 25, 2023, that authorized the update of LARA with me listed as chair in the first place. [*see* Exhibit 28, PageID.552-553]

[2] The Huron-Raisin Libertarian Party is a recognized sub-affiliate of the NLP-recognized Michigan affiliate.

relationship that does not exist. [s*ee* Exhibit 55, Email from the illegitimate board dated June 7, 2023]

  c) Defendant Saliba sent two identical emails on June 15, 2023, to the Party membership in an attempt to dissuade persons from attending the recognized affiliate's annual convention on July 15, 2023, by claiming his organization was the legitimate Libertarian Party organization and once again entitling said email "Official communication from the Libertarian Party of Michigan. [*see* Exhibit 56, Email from Defendant Saliba dated June 15, 2023]  These emails had their intended and inevitable result of confusion as demonstrated by a Facebook post from an LPM member. [*see* Exhibit 57, Facebook post evidencing member confusion]

  d) Defendant Saliba sent an email on June 16, 2023, to the Party membership in an attempt to dissuade persons from donating to the LPM recognized affiliate by claiming they were the legitimate Libertarian Party organization and once again entitling said email "Official communication from the Libertarian Party of Michigan."  This email took place **after** the filing of the Plaintiff's Motion for Preliminary Injunction. [*see* Exhibit 58, Email from Defendant Saliba dated June 16, 2023]

  e) A Google search shows that while the recognized affiliate comes up first (michiganlp.org), the second result is the illegitimate group

(michiganlp.net) with the word "Official" appended to it which would deceive persons into believing this was the recognized affiliate as follows:



[*see* Exhibit 66, Screenshot of Google search results for "Libertarian Party of Michigan"]

6. I would also note that the Defendants concede that if they and their supporters had attended the legitimate convention on April 1, 2023, in Wixom, they would not have had the votes to remove me. [*see* Defendants' Exhibit 14, PageID.751 "Straw No Confidence Vote"]

14

Executed on Jul 21, 2023 _____.

_____
Andrew Chadderdon (Jul 21, 2023 15:20 EDT)

Andrew Chadderdon, LPM/LPMEC Chair

15

# SECOND DECLARATION OF ANDREW CHADDERDON- V4

Final Audit Report                                                                 2023-07-21

| | |
|---|---|
| Created: | 2023-07-21 |
| By: | Caryn Dossantos (idrankthekoolaid@mac.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA1fwrisOlDXOqVTerRq1CosvteW3rU6YD |

## "SECOND DECLARATION OF ANDREW CHADDERDON- V4" History

- Document created by Caryn Dossantos (idrankthekoolaid@mac.com)
  2023-07-21 - 7:13:00 PM GMT- IP address: 73.14.251.148

- Document emailed to Andrew Chadderdon (andrew.chadderdon@gmail.com) for signature
  2023-07-21 - 7:13:29 PM GMT

- Email viewed by Andrew Chadderdon (andrew.chadderdon@gmail.com)
  2023-07-21 - 7:13:49 PM GMT- IP address: 66.102.6.42

- Document e-signed by Andrew Chadderdon (andrew.chadderdon@gmail.com)
  Signature Date: 2023-07-21 - 7:20:03 PM GMT - Time Source: server- IP address: 67.149.83.208

- Agreement completed.
  2023-07-21 - 7:20:03 PM GMT

Adobe Acrobat Sign