IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

LIBERTARIAN NATIONAL                    |
       COMMITTEE, INC.,                |
                       |
     Plaintiff,                        |
   v.                                   |    CIVIL ACTION NO.:
                       |
MIKE SALIBA,  et. al.                    |    23-cv-11074
                       |
     Defendants                        |
                       |    JURY TRIAL DEMANDED
                       |
                       |
_____|

**SECOND DECLARATION OF CARYN ANN HARLOS**

Under 28 U.S.C. §1746, I, Caryn Ann Harlos, declare as follows, under penalty of perjury:

1.     I am over the age of 18, of sound mind, and otherwise competent to provide this declaration under penalty of perjury.

2.     I am the National Secretary for the Libertarian National Committee and the Libertarian Party, having served in that position since 2018, as well as a Registered Parliamentarian with the National Association of Parliamentarians and a member of the American Institute of Parliamentarians.

3.     The following exhibits are true and accurate copies of the purported documents:

EXHIBIT 43

- Exhibit 27, Decision of the Judicial Committee of the Libertarian Party of Michigan dated December 19, 2022

- Exhibit 44, Majority Decision of the Judicial Committee of the National Libertarian Party in the case of McVay v. LNC and Hinds v. LNC dated February 13, 2022

- Exhibit 59, Bylaws of illegitimate group amended April 1, 2023

- Exhibit 60, LNC email ballot 202306901-02

- Exhibit 61, Minutes of the LNC Executive Committee dated February 5, 2023

- Exhibit 62, Emails between LNC Secretary Harlos and Defendant Saliba dated March 6, 2023

- Exhibit 63, Email from national Judicial Committee Chair confirming no appeals received for state-level affiliate

- Exhibit 64, Page from LNC Policy Manual on acceptable use of trademarks

- Exhibit 65, Selection from NLP Membership Report dated February 2023

- Exhibit 68, Draft meeting minutes of the LPMEC meeting via Zoom February 26, 2023

## AFFILIATION AND DISAFFILIATION

5.     In order to carry on the work of the Party, such as providing registrant data and listing affiliate contacts, the national Libertarian Party (NLP) routinely makes determinations about the legitimacy of state-level affiliate boards. This typically happens automatically and without controversy for most affiliates once a year when each state has its convention and notifies the NLP of any changes in leadership.  Less often it happens when the NLP is notified of resignations, filling of vacancies, disciplinary actions, and affiliate judicial committee decisions. No one ever claims that all these regular recognitions are an inappropriate role for the NLP or that it is interfering with the autonomy of an affiliate. In fact, it is obvious that the NLP should treat the leadership that was determined under the governing documents of a state-level affiliate as the presumptive leadership until it is proven that they are not, and such proof must be examined under the state affiliate's own governing policies and the Bylaws of the NLP.  A mere claim does not give any rival claimant automatic equal legitimacy.

6.     The LNC and staff process notifications of such changes as a routine matter of course, changing our website and access to data and other proprietary resources accordingly.

7.     Our Bylaws, in at least 15 places, require us to interface with the affiliate party through its leadership and thus require us to know the identity of its key leadership, particularly its Chair. [*see* Exhibit 44, Majority Decision of the

Judicial Committee of the National Libertarian Party in the case of McVay v. LNC and Hinds v. LNC dated February 13, 2022, Appendix A]

8.      Due to these requirements, in the event of any internal dispute, the only way the LNC can fulfil its duties to its affiliate under the bylaws is to examine and apply the affiliate's own bylaws in order to determine the identity of the correct affiliate chair as far as that is possible.   This is in fact a duty, since otherwise, the NLP could be providing personal information and data of NLP members and inquiries to people who are not entitled to this information which would be a serious breach of privacy, fiduciary duty, and responsibility to its national members and good faith inquirers. It further would make the NLP a co-conspirator to effect fraud upon the public if it knew that at least one set of imposters was claiming to be the Party, and it remained passive when this situation could be repudiated.

9.      The recognition of a legitimate chair in accordance with the affiliate's own governing policies is not disaffiliation of any other claimants as affiliation requires a legitimate claim: it is recognizing of the one and only state-level affiliate in that state which is required under the NLP Bylaws. [*see* Exhibit 44, Majority Decision of the Judicial Committee of the National Libertarian Party in the case of McVay v. LNC and Hinds v. LNC dated February 13, 2022]

10.     In the event that the LNC gets such a decision wrong, the national Judicial Committee has recognized a cause of action before them for "constructive disaffiliation" since at least 2011, with the most recent cases being decided in 2022. [Id.]

11.     The nature of "constructive disaffiliation" is that it is not something that the LNC consciously and explicitly does, it is a label for an action of the LNC that, in retrospect, had that effect.  It can only be known *in hindsight* after a ruling of the national Judicial Committee that such has occurred.

12.     In mid-December 2022, the NLP was notified that the Libertarian Party of Michigan Judicial Committee (LPMJC) had granted an appeal of Andrew Chadderdon and the resulting change restoring him to the chairmanship along with several other leadership changes.

13.     At some point following that notification through the beginning of 2023, I was notified that there was a petition for a special member convention to potentially reverse the effects of the LPMJC decision.  I was kept apprised of the date and location, which was decided to be April 1, 2023, in Wixom, Michigan.

14.     At the beginning of February 2023, I was notified that some members who did not agree with the Judicial Committee decision had unilaterally decided it was not in force and that rival claimants claimed to be the legitimate leadership.

15.     On February 5, 2023, the LNC Executive Committee held a meeting in executive session during which the situation in Michigan was discussed. [*see* Exhibit 61, Minutes of the LNC Executive Committee dated February 5, 2023]

16.     On February 6, 2023, an LNC email ballot was started to formally authorize the transmittal of a cease and desist letter to the rival claimant chair, Defendant Brungardt, as the LNC was honoring the LPM's internal dispute resolution process through the LPMJC.  This ballot was passed with a vote of 12-3 with 2 abstentions. [*see* Exhibit 60, LNC email ballot 202306901-02]

17.     On or about March 6, 2023, Defendant Saliba wrote the LNC indicating that certain actions of the LNC would be the basis of an appeal to the national Judicial Committee.  As it appeared that Defendant Saliba might not understand how the appeal process worked, and under which jurisdictional grounds he could appeal with potential upcoming deadlines, I sent him a series of emails informing him of his rights and the various jurisdictional grounds including (emphasis added) "**alleged** constructive disaffiliation" under which he could appeal with references to the NLP Bylaws and providing the email address to which an appeal petition would need to be sent.  I further cautioned him that certain time frames likely applied and that those time frames were close to expiring. [*see* Exhibit 62, Emails between LNC Secretary Harlos and Defendant Saliba dated March 6, 2023]

18.     According to the national Judicial Committee, they never received any appeal from Defendant Saliba, nor any other person, alleging "constructive disaffiliation" of the Michigan affiliate or regarding any other decision of the LNC regarding the state-level Michigan affiliate. [*see* Exhibit 63, Email from national Judicial Committee Chair confirming no appeals received for state-level affiliate]

19.     Due to the above facts, it is incoherent to claim that the LNC purposefully and explicitly "constructively disaffiliated" the Defendants as that is not an action that can be known or done in advance, and the Defendants never attempted to appeal any decision of the LNC to the national Judicial Committee for alleged "constructive disaffiliation" of the state level affiliate.

20.     As shown by the above facts, the Defendants have not exhausted their internal appeal rights, and have in fact, let their automatic appeal rights expire, despite claiming in the Reply that the LNC violated numerous of its own Bylaws. The first route the Defendants should have taken are the ones specified by the document they acknowledge is the "contract" between an organization and its members. [PageID.636 and Exhibit 5, PageID,456-457, Articles 7.12 and 8.2(d)]

20.     The LNC simply recognized what it judged to the legitimate chair of its **one and only** Michigan affiliate which has continuously existed 1972. At no time, was there any decision to disaffiliate the Michigan affiliate which remains fully affiliated, chaired by Andrew Chadderdon, and entitled to use the Party

Trademarks in identifying itself, engaging in fundraising activities, and running

candidates for public office among other party activities.

21.     The Defendants claim that their state Party membership entitles them

to use the trademarks of the Party to identify themselves as the state-level affiliate.

[PageID.612]  That statement leads to an absolute absurdity of hundreds of

thousands of national and state party members over decades in theory being able to

all claim they are the affiliate party in their respective states.  Being a member of

the national or state party and being able to say you *are a member of* the national or

a state party is not the same as being able to say *you are the Party* in any form. [*see*

Exhibit 64, Page from LNC Policy Manual on acceptable use of trademarks, and

PageID.636 and Exhibit 5, PageID.453, Article 4.1]

**CONTINUED INEVITABLE CONFUSION**

22.     Defendants claim that various articles on their website cure any

possible confusion. [PageID.642-643]  Rather, a review of the articles listed on

being on the Defendants' website confirms it merely adds to the confusion.  These

articles do not clearly and consistently state that the Defendants' organization is not

the recognized affiliate, but merely that the LNC supports a particular chair and at

times, his board.  Rather than outright acknowledging that the dispute is over the

identity of the affiliate and whether or not membership in Defendants' group would

confer membership in the affiliate, it is not addressed at all.  Average voters and

even average members are not sophisticated in these very nuanced arguments.  For

example, these attempted cures inevitably only cause greater confusion as follows:

a)      The "disclaimer" highlighted by Defendants is inherently confusing in

its statement that "The Libertarian Party of Michigan (LPM) is the state-

level affiliate of the Libertarian Party."  They claim to be the Libertarian

Party of Michigan and just reference a "leadership dispute."  However, an

affiliate is a non-human entity, the affiliate is manifested through its human

leaders and representatives, and those are the ones recognized by the LNC.

[PageID.630]

b)      The items put forward by Defendant as "cures" published on their

website contain claims of being the "state affiliate of the Libertarian Party in

Michigan" [PageID. 754]  and they further admit that these events "lends

itself to confusion" in their own words. [PageID. 753]  Nothing in

Defendants' exhibits clearly state that their organization is not recognized as

an affiliate by the NLP.

c)      The Defendants consistently and publicly refer to themselves as the

"elected leadership" (as they also do throughout their response); however,

none of them serve in any elected roles that they claim due to the decision of

the LPMJC and the filling of subsequent vacancies by the Chadderdon board

after they vacated any remaining seats. [*see* Exhibit 27, PageID.527-539,

and Exhibit 68, Draft meeting minutes of the LPMEC meeting via Zoom February 26, 2023]

d)   Additionally, the Defendants have continued to send emails labeled as "Official Communications from the Libertarian Party of Michigan" further adding to the confusion.  [*see* Exhibit 55, Email from the illegitimate board dated June 7, 2023, Exhibit 56, Email from Defendant Saliba dated June 15, 2023, and Exhibit 58, Email from Defendant Saliba dated June 16, 2023]  These emails were all sent **after** the Complaint was filed in this matter.

23.   The Defendants further point to social media posts on relatively small accounts as proof of curing confusion [PageID. 630, 652, 656-657, 660-661, 667-668]; however, these are not the sorts of items that are seen by every member nor the general voting public in any great number.  Notably, some of the social media posts claim to be from the "Official LPM." [PageID.667-668]  Further, no claim was made that *everyone* was confused, but that there was inevitable confusion *in general*.

24.   Even after the Defendants had an opportunity to amend their Bylaws to remove any confusion, they did not [*see* Defendants' Exhibit 8, PageID.696-712], and their Bylaws still state their purpose is to affiliate with the NLP. [*see* Exhibit 59, Bylaws of illegitimate group amended April 1, 2023, Article II]  The

NLP has outright disclaimed the Defendants' organization, and thus the Defendants are acting in contravention of their own Bylaws, particularly by never even appealing to the national Judicial Committee on these issues despite Defendant Saliba seeming to acknowledge the need for this in his email to the LNC and subsequent email exchange with me. [*see* Exhibit 62, Emails between LNC Secretary Harlos and Defendant Saliba dated March 6, 2023]

25.     Further confusion will now exist regarding the issue of member rights. Both the legitimate affiliate and the Defendants have amended their bylaws. Which bylaws can members count on to know the content of the "contract" that exists between them and the organization, and that the NLP will uphold?  It is the set passed by the recognized affiliate, but nowhere do the Defendants make this clear, needlessly confusing members as to their rights and responsibilities. [PageID.636]

**ARGUMENT ON EQUITIES**

26.     Defendants claim that foreclosing through injunction their right to use our Trademarks will hamper their fundraising efforts, [PageID.644] but in so doing tacitly admit that they must use our Trademarked name that they have been denied in order to raise money, cashing in on the value and reputation of that name.  If their assertions are correct that everyone who supports them are supporting them in their fight to be recognized being fully aware of this dispute, they can continue to

do so under a different name which should have no effect on support--according to their own arguments.  Contrary to their assertion that an injunction would preclude them from even "referring to the name of the party"  [PageID.644], nothing in the Complaint or Motion for Preliminary Injunction precludes them from merely referring to the name of the party.  They can continue to fundraise under "LNCfight" or under a political action committee using a name that describes the nature of their "fight."  Nothing would foreclose them from stating that they are fighting to be the recognized Libertarian Party of Michigan, though they are not currently recognized as such.  Further stating that a loss in this injunction would harm them in a state court case is begging the question.  If they should be enjoined, they should be enjoined.  They have no right to have an advantage in another case. The LNC could claim the converse.  Neither should be persuasive.

   27.    Defendants further are using the Trademarked name in order to stop or attempt to stop the recognized affiliate from obtaining an EIN, open a bank account, file campaign finance reports, transfer and use their domain unhindered, and fundraise effectively, which is in fact crippling the entity entitled to use the LNC's trademarks.

Executed on _____.
Jul 21, 2023

_Caryn Ann Harlos_
Caryn Ann Harlos (Jul 21, 2023 11:08 MDT)

Caryn Ann Harlos, LNC and NLP Secretary

# SECOND DECLARATION OF CARYN ANN HARLOS- V3

Final Audit Report                                                2023-07-21

| | |
|---|---|
| Created: | 2023-07-21 |
| By: | Caryn Dossantos (idrankthekoolaid@mac.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAtokaCddn7_lmI9vavL3Ch7BOxrdWPQlQ |

## "SECOND DECLARATION OF CARYN ANN HARLOS- V3" History

Document created by Caryn Dossantos (idrankthekoolaid@mac.com)
2023-07-21 - 5:04:58 PM GMT- IP address: 73.14.251.148

Document emailed to Caryn Dossantos (carynannharlos@gmail.com) for signature
2023-07-21 - 5:05:37 PM GMT

Email viewed by Caryn Dossantos (carynannharlos@gmail.com)
2023-07-21 - 5:06:10 PM GMT- IP address: 66.102.6.44

Signer Caryn Dossantos (carynannharlos@gmail.com) entered name at signing as Caryn Ann Harlos
2023-07-21 - 5:08:10 PM GMT- IP address: 73.14.251.148

Document e-signed by Caryn Ann Harlos (carynannharlos@gmail.com)
Signature Date: 2023-07-21 - 5:08:12 PM GMT - Time Source: server- IP address: 73.14.251.148

Agreement completed.
2023-07-21 - 5:08:12 PM GMT

Adobe Acrobat Sign