STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW
BUSINESS COURT

COMERICA BANK,
       Plaintiff/Counter-Defendant,

vs.

LIBERTARIAN PARTY OF MICHIGAN
EXECUTIVE COMMITTEE, INC.;
JOSEPH BRUNGARDT; MICHAEL
SALIBA; and ANGELA THORNTON,
a/k/a ANGELA CANNY,
       Defendants/Counter-Plaintiffs,

and

ANDREW CHADDERDON,
       Defendant.
_____/

Case No. 23-000557-CB

Hon. Timothy P. Connors

Henry Stancato (P29538)
STANCATO TRAGGE WELLS PLLC
Attorney for Comerica Bank
P.O. Box 270
Grosse Ile, MI  48138-0270
(248) 731-4500
hstancato@stwlawfirm.com

C. Nicholas Curcio (P75824)
CURCIO LAW FIRM PLC
Attorney for Libertarian Party of Michigan
Executive Committee, Inc., Joseph Brungardt,
Michael Saliba, and Angela Thornton
16905 Birchview Drive
Nunica, MI  49448
(616) 430-2201
ncurcio@curciofirm.com

Bruce T. Wallace (P24148)
Fawn C. Armstrong (P74980)
Oscar A. Rodriguez (P73413)
HOOPER HATHAWAY, P.C.
Attorneys for Andrew Chadderdon
126 South Main Street
Ann Arbor, MI  48104
(734) 662-4426
bwallace@hooperhathaway.com
farmstrong@hooperhathaway.com
orod@hooperhathaway.com
_____/

**DEFENDANT CHADDERDON'S INITIAL DISCLOSURES
PURSUANT TO MCR 2.302(A)**

EXHIBIT 46

Defendant Andrew Chadderdon ("Defendant" or "Chadderdon"), by and through legal counsel, Hooper Hathaway, P.C hereby submits his initial disclosures without waiving any objections:

**PRELIMINARY STATEMENT**

This case is in the preliminary phases of discovery and investigation and, therefore, the initial disclosures set forth below are necessarily made without full knowledge of the facts, circumstances, and legal theories involved in the case. Defendant makes such disclosures in good faith effort to comply with MCR 2.302(A) and based upon information currently available to them. Consequently, further discovery, investigation, legal research, and/or analysis may supply additional facts and new meaning to known facts, as well as establish new factual conclusions and legal contentions, all of which may lead to changes, additions to, and variations from these initial disclosures. Accordingly, Defendant reserves his right to amend these disclosures as permitted by MCR 2.302(E), local rules, and/or Order of this Court consistent with subsequent developments in this case. Nothing in this initial disclosure shall constitute a waiver of any claims, defenses, privileges, or objections Defendant has or will have in this lawsuit. Furthermore, no admissions are intended through the service of this initial disclosure.

I. **Factual Basis of Defendant's Defenses (MCR 2.302(A)(1)(a))**

In early 2022, a distinct faction or divide appeared to have arisen amongst the leadership and members of the Libertarian Party of Michigan ("LPM"). Due to perceived differences between these two sides, several board members resigned from their positions. On June 14 and 15, 2022, Chair Tim Yow and First Vice-Chair Ben Boren, along with Brandon Waryzbok and Jami Van Alstine, resigned from the Libertarian Party of Michigan Executive Committee, ("LPMEC"), which is the governing board of the Libertarian Party of Michigan, ("LPM"). At that time,

Defendant Andrew Chadderdon, ("Chadderdon"), was the Second Vice-Chair and, per the bylaws, ascended to the chairmanship due to the resignations. A convention was previously scheduled to be held on July 9, 2022, with notice of this convention sent on June 8, 2022.

Initially after the resignations, there was some uncertainty on how to fill the vacancies. Chadderdon began researching by contacting several members of the LPM and the national Libertarian Party. He spoke with Bill Hall, who informed Chadderdon of the existence of the LPM Corporate Bylaws. However, not a single member of the current LPMEC had been aware of their existence. The Corporate Bylaws were found to be valid, as Chadderdon was provided the executed copies of the corporate charter, corporate bylaws, and records in the minutes showing their adoption. On June 18, 2022, Chadderdon presented his findings to the LPMEC, which included the procedures regarding vacancies. These procedures made it clear that Chadderdon was now the Chair.

The very next day, on June 19, 2022, Dave Canny – who was on the side of the resigning members – gave notice of a motion to the LPMEC for a Vote of No Confidence against Chadderdon, in order to "force" a vote for Chair at the July 9, 2022 convention. On June 29, 2022, Dave Canny sent notice of this motion – for a Vote of No Confidence and to fill vacancies – to all of the members of the LPM, without authorization from the Chair, Secretary, or Communications Director, nor by vote of the LPMEC. At the LPMEC Executive Committee meeting on June 29, 2022, Chadderdon sought approval to hire an attorney and parliamentarian for outside opinions regarding the bylaws to give guidance to the LPMEC. The LPMEC voted to hire attorney Eric Doster for a 2-hour consultation, but voted against hiring a parliamentarian. On July 5, 2022, attorney Eric Doster met with the LPMEC, and advised the committee that any corporate law does not supersede the corporate bylaws, and the actions of the convention rule absent a violation of the

3

bylaws. Mr. Doster further stated, however, that he was not informed of any notice requirements of the bylaws.

On July 9, 2022, the LPM held a candidate Nominating Convention during which Chair Chadderdon ruled that filing the board vacancies was out of order due to failure to give proper notice of filing the vacancies as well as the Motion of No Confidence, as the bylaws require at least 30 days' notice to members.[1] His ruling was appealed, so he voluntarily relinquished the chairmanship of that meeting only as he could not bear responsibility for what he believed was a blatant disregard of the bylaws and rules. The vacancies were filled, and the vote of No Confidence removed Chadderdon from his board position on the LPMEC. The vacancies were filled in part as follows: Joseph Brungardt as Chair, Mike Saliba as First Vice Chair, and Mary Buzuma as Second Vice Chair. The vote of No Confidence motion also differed substantially in content than the notice of the motion. At some point, Joseph Brungardt ("Brungardt") was given signer authorization over the LPM's bank accounts at Comerica Bank.

On November 18, 2022, Chadderdon appealed his removal and the election to fill vacancies to the LPMI Judicial Committee, citing a breach of the bylaws. Parliamentarian Jonathan Jacobs submitted a written opinion in support of Chadderdon's appeal. Parliamentarian Josh Martin submitted a written opinion in support of the respondents and in opposition to Chadderdon's appeal. On December 9, 2022, the LPMI Judicial Committee held its hearing on the Chadderdon appeal. On December 13, 2022, the LPMI Judicial Committee held a meeting to decide the matter, and produced minutes and a written opinion, in which it decided that Chadderdon was the Chair.

---

[1] The first resignation was on June 14, 2022, which is less than 30 days prior to the convention. Therefore it would be impossible to give the required 30-days notice to hold elections to fill those vacancies by the July 9, 2022 convention. However, it has since been clarified that notice for business at a candidate nominating convention would require 60-days notice before the date of the convention.

4

> We have decided to grant Mr. Chadderdon's appeal. The vote of no confidence, the election of officers, and the election of Congressional district representatives conducted at the Candidate Nominating Convention on July 9th are to be considered out of order as a violation of our bylaws and parliamentary procedures. The Libertarian Executive Committee shall be reverted to its composition as of July 8th. Any actions taken by the erroneous board which are of a continuing nature are null and void.

At this point, the insurgent faction – which includes Joe Brungardt, Michael Saliba, and Angela Thornton (aka Canny) – started to organize and make efforts to again oust Chadderdon and seize control of the party. On December 26, 2022, the insurgent faction circulated a petition to members of the LPM – which violated their signed NDAs to only use the party database for approved communications – in which they called for a special convention to vote for a motion of no confidence in Chadderdon and a vote to fill vacancies created by the LPMI Judicial Committee's decision, which invalidated the previous July 9, 2022 election. On January 3, 2023, the insurgent faction submitted its petition with a sufficient number of signatures to trigger the organization of a special convention. On January 6, 2023, the LPMEC held a special meeting and a motion passed to authorize the Chair to make arrangements for a special convention. On January 25, 2023, the LPMEC passed a motion to hold the special convention on April 1, 2023 in Wixom. Also during this meeting, Joe Brungardt moved to give Chadderdon access to the LPM's bank accounts at Comerica Bank, which was approved without objection. Lastly, a motion to update LARA filings to reflect the current board of officers was approved without objection. On January 31, 2023, the insurgent faction held its own meeting in which it declared itself to be the legitimate board of the LPM, and issued a competing call to a regular convention, also on April 1, 2023, but in Lansing. The self-appointed members of this insurgent board based their declaration on alleged "new information" that made the Judicial Committee's decision invalid, so they were reinstated by

5

default.[2] Certain members of this insurgent board unlawfully obtained the LPM's member contact database and used it to send emails to members, again violating their NDAs. These emails used the national Libertarian party's trademarks and claimed that the Wixom convention was cancelled and announced the Lansing convention. They set up a "michiganlp.net" domain to impersonate the legitimate "michiganlp.org" domain. They further sent emails soliciting donations and member fees in the name of LPM. They also attempted to contact the venue in Wixom to cancel that reservation but were unsuccessful.

Brungardt never accompanied Chadderdon to Comerica Bank to have his name added as an authorized signer on the LPM accounts, despite being the person that motioned for this to occur. Instead, on February 13, 2023, he purportedly went to Comerica Bank and signed documentation to add Michael Saliba ("Saliba") and Angela Thornton aka Canny ("Thornton") as additional signers on at least one of LPM's accounts.[3]

On February 15, 2023, attorney Eric Doster sent Brungardt a letter on behalf of the LPM, demanding that he and the other members of this insurgent board immediately terminate any further misrepresentation as having any authority to govern the affairs of the LPM and to return all property belonging to the LPM. On February 16, 2023, the Chair of the Libertarian National Committee, Angela McArdle, sent a letter to Brungardt demanding that he and the insurgent board cease using the LPM's registered trademarks, return all property belonging to LPM, and immediately terminate any further misrepresentation that they are affiliated with the national Libertarian party. Brungardt and the other members of the insurgent faction paid no heed to these

---

[2] Under the bylaws, the insurgent board could have appealed the LPMI Judicial Committee's decision, but they have not taken that lawful avenue.

[3] This information was found in Plaintiff Comerica Bank's First Amended Complaint, paragraphs 12-13.

letters.

On February 22, 2023, Chadderdon was forced to go to Comerica Bank and prove that he was the legitimate Chair of the LPMEC in order to regain control of LPM's assets from the insurgent board. At this time, LARA records showed that Daniel Ziemba ("Ziemba") was the secretary and Norm Peterson was the treasurer of LPMEC. Comerica Bank required certification from Secretary Ziemba that Chadderdon was the legitimate Chair before processing his request to be substituted as signer on LPM accounts.[4] On February 23, 2023, Chadderdon and Ziemba returned to the bank and provided several documents proving that Chadderdon was the legitimate Chair. Accordingly, Comerica Bank processed Chadderdon's request. On February 27, 2023, Chadderdon opened three new accounts for LPM at Comerica, and transferred the funds from the three previous accounts to the three new accounts, leaving $1,000.41 in the old general account to cover any previously authorized automated subscriptions or payments for ongoing expenses. At no point did Chadderdon request that Comerica Bank close any of the three old accounts, despite two of them having zero balances.

According to Plaintiff Comerica Bank, on March 9, 2023, Saliba appeared at Comerica Bank to complain about being removed as an account signer for LPM. On this same date, attorney Nick Curcio transmitted a letter purporting to act as attorney for LPMEC and asserted on behalf of LPMEC that Chadderdon was not a LPMEC officer and that some of the LARA filings for LPMEC were fraudulent. On March 10, 2023, Saliba returned to Comerica Bank with newly filed LARA documentation that contradicted the previous LARA filings that showed Chadderdon to be

---

[4] As Treasurer Norm Peterson was resigning from the LPMEC for health reasons, Comerica Bank stated that certification from Secretary Daniel Ziemba would be sufficient.

president.[5] Comerica Bank decided to terminate its deposit relationship with LPMEC and issued cashier's checks representing the closing balances for each of the four deposit accounts with positive balances, which totaled $38,233.30. Comerica Bank mailed the cashier's checks to the address on record on its books at that time. Allegedly, defendants Brungardt, Saliba, and Thornton contested to Comerica Bank the delivery of the cashier's checks to that address.[6] On April 6, 2023, Plaintiff Comerica Bank brought the instant interpleader action. Upon Comerica Bank's request, Chadderdon has not deposited or cashed any of these cashier's checks.

On April 1, 2023, the insurgent board held its fraudulent convention in Lansing. On May 5, 2023, The Libertarian National Committee, Inc., ("LNC"), filed suit against Brungardt, Saliba, Thornton, Rafael Wolf, Greg Stempfle, Jami Van Alstine, Mary Buzuma, and David Canny in the United States District Court for the Eastern District of Michigan for trademark infringement and other Lanham Act violations under 15 USC §§ 1114, 1125. On June 15, 2023, the LNC filed a motion for preliminary injunction against those same defendants, which is scheduled for hearing on August 23, 2023, before District Judge Judith E. Levy.

## II. Legal Theories on which Defendant's Defenses are Based (MCR 2.302(A)(1)(b))

1. Plaintiff's claims are barred, in whole or in part, because both the LPM Bylaws and the Michigan Nonprofit Corporation Act require adherence to the Judicial Committee's December 13 and 19, 2022 decision, which invalidated Brungardt's selection as LPMEC Chair and recognized Chadderdon as the legitimate Chair.

2. Plaintiff's claims are barred, in whole or in part, because the affairs of the LPM and the LPMEC are governed by the LPM bylaws and not by a state statute, as the First

---

[5] This information was found in Plaintiff Comerica Bank's First Amended Complaint, paragraphs 19-21.
[6] This information was found in Plaintiff Comerica Bank's First Amended Complaint, paragraphs 23-26.

Amendment to the United States Constitution requires that the political party rules prevail.

3. Plaintiff's claims are barred, in whole or in part, because the bylaws of the LNC state that there shall be no more than one state-level affiliate party in any one state, and the LNC does not recognize Brungardt, Saliba, or Thornton to be legitimate officers or representatives of the LPMEC.

4. Plaintiff's claims are barred, in whole or in part, because Section 535 of the Michigan Nonprofit Corporation Act (MCL 450.2535) does not apply to the LPMEC as it is organized on a directorship basis and has no members in law.

5. Plaintiff's claims are barred, in whole or in part, because on February 15, 2023, legal counsel for the legitimate LPM sent a cease-and-desist letter to Defendant Brungardt to immediately terminate any further misrepresentation as having any authority to govern the affairs of the LPM and the LPMEC and to return its property.

6. Plaintiff's claims are barred, in whole or in part, because the Libertarian National Committee, Inc., sent a cease-and-desist letter to Defendant Brungardt, demanding an immediate termination to any representations of being the legitimate Michigan state affiliate of the Libertarian National Committee, Inc., and use of its Trademarks, and from identifying as the recognized LPMEC.

7. Plaintiff's claims are barred, in whole or in part, because the Libertarian National Committee, Inc., has solely recognized Defendant Chadderdon as the legitimate chair of the LPMEC.

Defendant further refers to his Answer to the First Amended Complaint, his papers, and

the theories identified during the course of discovery.

### III. Individuals with Discoverable Information and the Subjects Thereof (MCR 2.302(A)(1)(c))

1. Andrew Chadderdon, c/o Hooper Hathaway. Chadderdon is expected to have discoverable information and evidence concerning the allegations in Plaintiff's Complaint and any defenses or counterclaims asserted by the Defendants.

2. Joseph Brungardt, Michael Saliba, and Angela Thornton-Canny, c/o Curcio Law Firm. These individuals are expected to have discoverable information and evidence concerning the allegations in Plaintiff's Complaint and any defenses or counterclaims asserted by the Defendants.

3. Individuals presently or previously affiliated with LPM, including Daniel Ziemba, Connor Nepomuceno, Eric Doster, and Jonathan M. Jacobs, who may have knowledge concerning the allegations in Plaintiff's Complaint and any defenses or counterclaims asserted by Defendants.

4. Individuals presently or previously affiliated with the LPMI Judicial Committee, including Connor Nepomuceno, Joshua M. Smith, and Robert W. Roddis, who may have knowledge concerning the allegations in Plaintiff's Complaint and any defenses or counterclaims asserted by Defendants.

5. Individuals presently or previously affiliated with LNC, including Angela McArdle, who may have knowledge concerning the allegations in Plaintiff's Complaint and any defenses or counterclaims asserted by Defendants. Angela McArdle is c/o Fresh IP PLC and/or Hooper Hathaway.

6. Rafael Wolf, Greg Stempfle, Jami Van Alstine, Mary Buzuma, and David Canny, c/o Curcio Law Firm. These individuals are expected to have discoverable information and evidence concerning the allegations in Plaintiff's Complaint and any defenses or counterclaims asserted by the Defendants.

7. Individuals presently or previously affiliated with Comerica Bank, including Jill Kwiecien, who may have knowledge concerning the allegations in Plaintiff's Complaint and any defenses or counterclaims asserted by Defendants. Jill Kwiecien is c/o Stancato Tragge Wells PLLC.

8. Any and all persons and entities referenced in Plaintiff's Complaint.

9. Those witnesses identified in discovery.

10. Those witnesses identified in Plaintiff's Witness List.

11. Those witnesses identified in Defendant's Witness List.

12. Those witnesses identified in Defendants/Counter-Plaintiffs' Witness List.

13. Any persons or entities subpoenaed, deposed, and/or noticed for deposition.

14. Any persons or entities identified by Plaintiff's counsel.

15. Any persons or entities identified by Defendant's counsel.

16. Any persons or entities identified by Defendants/Counter-Plaintiffs' counsel.

17. Those witnesses listed in Plaintiff's initial disclosures that Defendant choose to rely upon.

18. Any and all rebuttal witnesses to be named.

19. Any and all impeachment witnesses to be named.

20. Any and all foundation witnesses to be named.

21. Experts who have not been retained.

Defendant asserts that discovery in this matter is ongoing, and a witness list will be filed in accordance with the Court's scheduling order. Defendant reserves the right to supplement these initial disclosures of potential witnesses pursuant to MCR 2.302(E).

## IV. Documents and ESI in Defendant's Possession Supporting their Claims (MCR 2.302(A)(1)(d))

Defendant continues to search for and identify relevant documents in its possession and control, all of which are located either at Defendant's places of business, or at the offices of Hooper Hathaway, P.C., unless otherwise specified.

In addition to the above, Defendant will rely upon those non-privileged, non-work product, relevant documents that are in its possession, custody, or control (or that of its counsel), and that tend to support Defendant's position to its claims and defenses in this litigation to the extent that they exist, including, without limitation, the following:

1. All documents identified or referenced in Defendant Chadderdon's Answer to Plaintiff's First Amended Complaint;

2. Any related resumes of witnesses or parties;

3. Documents requested and produced in the parties' discovery requests;

Through the identification of the categories of documents above, Defendant does not waive their rights to object to production of, or any request to produce, any specific document or documents, and Defendant expressly reserves the right to object to the production of all documents on the basis of attorney-client privilege and/or attorney work produce doctrine. Documents and things that fall within these categories, that are not privileged or otherwise protected from discovery, and that have not been produced, will be produced as agreed upon by the parties in accordance with local rules. Investigation continues, and Defendant reserves the right to supplement these disclosures upon more information received.

## V. Documents and ESI Outside of Defendant's Possession Supporting their Claims (MCR 2.302(A)(1)(e))

- Documents identified in Plaintiff's initial disclosures;
- Documents identified in Defendants/Counter-Plaintiffs' initial disclosures;
- Documents produced during discovery; and
- Documents received in response to subpoenas served upon third parties throughout this litigation.

Investigation of this matter continues.

## VI. Computation of Damages (MCR 2.302(A)(1)(f))

The amount of damages suffered by Defendant for Plaintiff's initiation of this lawsuit is not yet known. Defendant is seeking attorney's fees, costs, and other such remedy that the court finds is just, which cannot yet be fully calculated.

Defendant further refers to any damages and costs identified in his Answer to the First

Amended Complaint, in his papers, and during the course of discovery. Investigation of this matter continues.

### VII.  A Copy of Pertinent Insurance Policies (MCR 2.302(A)(1)(g))

Defendant does not believe that any such document exists. If Defendant, Defendants/Counter-Plaintiffs, or Plaintiff identify any such document, they will provide a copy for the opposing party's inspection.

### VIII.  Anticipated Subject Areas of Expert Testimony (MCR 2.303(A)(1)(h))

No decision has been made to date as to each and every expert that Defendant may call upon to testify at the time of trial. However, at this early stage of discovery, it is anticipated that expert testimony on parliamentarian rules and procedures, expert testimony on political party bylaws and procedures, as well as economic damages will be required. Additional areas of expert testimony may be identified, and Defendant will identify its experts as appropriate during the course of this litigation.

Respectfully submitted,

Dated: July 6, 2023

By: /s/ *Fawn Armstrong*
HOOPER HATHAWAY, P.C.
Bruce T. Wallace (P24148)
Oscar A. Rodriguez (P73413)
Fawn C. Armstrong (P74980)
126 South Main Street
Ann Arbor, MI 48104
(734) 662-4426
(734) 662-6098 Fax
bwallace@hooperhathaway.com
orod@hooperhathaway.com
farmstrong@hooperhathaway.com
Attorneys for Defendant Andrew Chadderdon

## **PROOF OF SERVICE**

I hereby certify that on July 6, 2023, I electronically served the foregoing document via email on attorneys for all parties:

hstancato@stwlawfirm.com

ncurcio@curciofirm.com

I declare that the above statements are true to the best of my knowledge, information and belief.

>*/s/ Fawn Armstrong*
>Fawn C. Armstrong (P74980)
>HOOPER HATHAWAY, P.C.
>Attorneys for Defendant Chadderdon