

# Appeal to the Judicial Committee

RE: INSUFFICIENT NOTICE OF BUSINESS CONDUCTED AT CANDIDATE NOMINATING CONVENTION ON JULY 9 2022 – SUPPORTING ARGUMENTS

Andrew Chadderdon | December 2, 2022

EXHIBIT 67

## Timeline of Events

5/16/2022 – First LPMI Candidate Training Seminar held by Andrew Chadderdon

5/29/2022 – Closure of the 2022 Libertarian National Convention

6/13/2022 – Regular meeting of the LEC – Attempt to pass "Condemn Bigotry + disavow LNC" resolution

6/14/2022 – Second LPMI Candidate Training Seminar held by Andrew Chadderdon

6/14/2022 – Resignation of Brandon Warzybok and Jami Van Alstine from District Representative positions on LEC

6/15/2022 – Resignation of Tim Yow and Ben Boren from Chair and 1st Vice Chair of LEC

6/18/2022 – Submission of first analysis of governing documents and assertions regarding handling of the resignations by Andrew Chadderdon

6/19/2022 – Submission of Motion of No Confidence in Andrew Chadderdon by Dave Canny to members of the LEC

6/20/2022 – Special Meeting of the LEC (called in 6/13/2022 Regular Meeting)

6/22/2022 – Special Meeting of the LEC

6/29/2022 – Dave Canny sends Motion of No Confidence to entire party

6/29/2022 – Special Meeting of the LEC

7/5/2022 – Special Meeting of the LEC

7/9/2022 – 2022 LPMI Candidate Nominating Convention

## Background

At the 2022 LNC, the Mises Caucus was successful in electing leadership of the LP, and further made updates to the platform of the national party, which by extension is part of the LPMI platform. Tim Yow later informed members of the party that he made his decision to resign from the party on his flight home (had he informed members right away, it would have allowed notice requirements to be met to hold elections at the July 9 Convention).

At the June 13 meeting of the LEC, Brian Ellison introduced the motion below to the LEC. It failed, at least in part because it attempted to assert that there could have been a motive in the platform change to allow recruiting of bigots, and further suggested that the LPMI should seek to separate from the views of the national LP.



**Brian Ellison** Today at 11:40 AM
Here is the resolution I will be introducing this evening:
WHEREAS, The 2022 Libertarian National Convention delegation voted to amend plank 3.5 (Rights and Discrimination) in the national platform by removing the line, "We condemn bigotry as irrational and repugnant" and replacing it with "We uphold and defend the rights of every person, regardless of their race, ethnicity, or any other aspect of their identity";

WHEREAS, Whether true or not, many groups and individuals now believe the Libertarian National Committee to be led by those who condone bigotry, and furthermore believe this softening in verbiage to be a mechanism to recruit new members who may condone bigotry; and

WHEREAS, The Libertarian Party of Michigan wishes to separate itself from any such notion and make a strong statement to the contrary; now, therefore, be it

RESOLVED, That the Libertarian Party of Michigan condemns bigotry as irrational and repugnant. (edited)

After the motion failed, there were the 4 resignations of Brandon Warzybok, Jami Van Alstine, Tim Yow, and Ben Boren over the following 2 days.

## Initial Handling

After the resignations of several members of the LEC on June 14-15, it was unclear how filling of the vacancies should be handled. I immediately began researching the handling, by contacting all knowledgeable people that I could. I contacted several members of the LPMI, and in the national LP. After initial contact with a parliamentarian, it became clear that the LPMI bylaws had extensive problems with them.

I reached out to others, including Bill Hall, who informed me of the existence of LPMI Corporate Bylaws. After consulting with him and others in the party, I believed the corporate bylaws to be valid and in effect. However, due to institutional failings in the party, not a single member of the current LEC had been aware of their existence. Bill Hall later confirmed their validity, as did other members, by providing the executed copies of the corporate charter, corporate bylaws, and records in the minutes from the past showing their adoption.

As of Jun 18, 2022, I presented the findings of my investigation to the LEC, see Appendix A for the documentation submitted at this time. In preparing the initial assessment, it was an open question whether the resignations had taken effect and I was the chair, or whether it required an act of the convention, and I was only the "Acting Chair". Assessing this situation, the implication in the immediate term was no different in the practical meaning, so believing the Corporate Bylaws would take precedence, it was my ruling at the time that the resignations were in effect, and I had become chair. Tim Yow and Ben Boren did not contest this claim at any point with the intent to assert that either of them would be chair.

The analysis was met with minimal critical assessment, and mostly with personal attacks and character assassinations.

## Attempt to hire Attorney and Parliamentarian

Following the initial assessments, and resulting from the problems with our bylaws, and the ambiguities between the LPMI bylaws and the corporate bylaws, it became clear that we needed to hire professional help to clarify the situation and determine what specifically was the correct handling. Given the implication of the LPMI Executive Committee having been incorporated as a Non-Profit Corporation under Michigan law, it prevented any parliamentarian from making an opinion on a matter involving a question of law.

I sought referrals for attorneys, including from Bill Hall (including asking him if he wished to conduct that analysis as an attorney, which he declined), and ultimately got 2 referrals, one for Mr. Eric Doster, and another attorney who didn't respond to my inquiries. Given the limited time until convention, I proceeded to seek to hire Mr. Doster.

I had also received a referral for Mr. Steve Britton to consult as a Parliamentarian. He was the 2021 National Association of Parliamentarians, Bylaws Committee Chair, which gave him very good qualifications to consult on the topics in question.

An LEC meeting was held on 2022.06.29, for the purpose of considering authorization of funds to hire both individuals. Given the short time available before convention, I sought worst case

estimates for the cost to assess the matter. In that meeting, it was ultimately approved only to hire Mr. Doster for a 2-hour consultation. It was rejected to provide any funding to hire a parliamentarian.

## Consultation with Attorney

The LEC special meeting on 2022.07.05 was held to host Mr. Eric Doster for a summary of his assessments and a question-and-answer session. While Mr. Doster gave parliamentary interpretations through many parts of the meeting, much of the time based on faulty assumptions that were provided by members of the board, he made a few key statements that determine the correct handling. In his opening remarks, he made clear that he had received no guidance on what to find, and had only been provided with the input documents, and asked to assess. He also mentioned that due to the short analysis period, he would have some "knowledge-gaps", specifically including requirements for notice. This was a key consideration, and a qualification that needed to be considered with all his following statements. He then gave an interpretation on what had been one of the primary questions of law, stating that the corporate bylaws and Michigan statutes for Non-Profit Corporations would never overrule the organizations bylaws and RONR. In response to further questions by members of the board, he gave his opinion on how to handle some of the challenging situations before the board, and in some of those scenarios indicated it was accepted to consider elections of board members and removal via motion of no confidence. Given that notice requirements are key to the legality of the actions performed at a special convention, his qualification from the beginning of his statements did change the conclusion for these scenarios. Other board members ignored this.

*See clip: "2022.07.05_LPMI_ExComm_Intro_remarks_notice_not_considered.mp4" provided with appeal.*

Later in the meeting, he commented that, in general, whatever the convention body does is unassailable. However, he stipulated in Q+A that that only holds true as long as it is not against the bylaws. Since the appealed actions from the convention were done in violation of the notice requirements, they are indeed against the bylaws.

*See clip: "2022.07.05_LPMI_ExComm_55m_8s_Convention_Cant_Break_Bylaws.mp4"*

## Motion of No Confidence

On 2022.06.19, less than 24 hours after my initial sending of bylaws interpretations, Dave Canny sent a Motion of No Confidence to members of the LEC.



After Dave's request to send the notice to the whole party, it was originally requested by the secretary to send the notice (requested to Comm Director).  After pushback from the chair regarding the legitimacy of the requirements to send the notice, the secretary ultimately decided against taking action force the sending of the notice on those grounds.  Following the notice not being sent, Dave Canny decided to manually send the notice to all members of the party, absent any formal authorization from the chair, secretary, comms director, or LEC.



Both notices make a claim that I have failed to perform fiduciary duties as 2nd Vice Chair, and therefore should be removed as Chair. However, he states specifically in his email that he means simply to utilize it as the only means available to force an election of a chair that he believes is "owed". The fact that this appeared to be the only means available to force that outcome should've perhaps been a sign that this outcome was not legitimate.

He further reiterates this in a post on Discord on the same day:



At the July 9 Convention, Dave introduced a further modified motion, citing specific claims of failures of duty.



Each of the "Whereas" statements in this claim, where they are not completely subjective and biased, are demonstrably false.

- Candidate training sessions were held on May 16, and June 14, with more scheduled before and after convention. Evidenced by notices sent to entire party via Communications Director announcements
  - 
    - See addendum B for party email announcing second training (combined with convention notice)
- I had maintained a list of 45 prospective candidates that I maintained regular outreach to. Many of them were new to the party, and several ultimately ran for office.
- The notice claims that I failed to properly notify the Bureau of Elections of the convention date. This is false, and no effort was made to confirm this claim by even asking me before it was included in this motion. I sent notice on June 5 and and a follow up on June 13, with both seeking confirmation of receipt. The confirmation was never received.

- o Mary Buzuma contacted Dan Ziemba about sending a notice on June 20. Since I had been looking for a confirmation of receipt from the Bureau of Elections, I welcomed another notice to be sent. It was wrongly assumed from the fact that I did not stop Mary and Dan from sending a notice, that no previous notice had been sent.

> Re: Appointment Request: Libertarian Party of Michigan - Filing for Candidates Nominated at Convention
>
> **Subject:** Re: Appointment Request: Libertarian Party of Michigan - Filing for Candidates Nominated at Convention
> **From:** Andrew Chadderdon <andrew.chadderdon@gmail.com>
> **Date:** 6/13/2022, 7:06 AM
> **To:** elections@michigan.gov
> **CC:** Andrew Chadderdon <vcpoliticaldirector@michiganlp.org>, Tim Yow <chair@michiganlp.org>, Secretary LPM <secretary@michiganlp.org>
>
> Hello,
> I am following up on my previous inquiry about scheduling an appointment on Monday Jul 11 to submit candidate nominations for the Libertarian Party of Michigan. Also if you can refer to the earlier email, I was wondering if you can provide any guidance for a couple particular parts of the process as well.
>
> Thank you very much,
> Andrew Chadderdon
> Libertarian Party of Michigan
> Political Director / 2nd Vice Chair
>
> On Sun, Jun 5, 2022 at 10:46 PM Andrew Chadderdon <vcpoliticaldirector@michiganlp.org> wrote:
>> Hello,
>>
>> The Libertarian Party of Michigan is having its candidate nominating convention on July 9th 2022, and I would like to make an appointment for Monday July 11 to make filings for candidates nominated to be on the ballot in the Nov 2022 election.
>>
>> Can you please let me know what the process will be? What forms must be submitted for each nomination, etc? Also, is it possible for filing documents for a candidate at a county level to be filed at the state offices in Lansing in the same appointment?
>>
>> Thank you,
>> Andrew Chadderdon
>> LPMI - 2nd Vice Chair - Political Director

- There was insufficient time to properly give notice to hold elections from the day that the resignations occurred to be included in the July 9 convention (first resignation occurred on June 14, less than 30 days prior to the convention).
- Business agenda was provided before the convention, and was only delayed to a day or two before due to obstruction from hiring a parliamentarian and attorney for proper consultation. This left me forced to evaluate much more difficult considerations regarding what business was legitimate and take personal responsibility for the interpretations I reached and acted on.
- It claims that I "weaponized the bylaws", which is a crude characterization of "following them and expecting others to do the same".
- The chair is entitled to act on behalf of the board, absent formal guidance from the LEC, in between meetings. The actions to search for a parliamentarian and attorney are well in line with that.
- The motion itself states that its intention is simply to force an election, which is not in line with the bylaw (Article III, Section 10) which authorizes it.

The convention body was provided false information, and asked to vote on the motion in false pretense. This is all in addition to the failure of notice that already renders it invalid.

# Appendix

## A1. Email - Libertarian Party of Michigan - Resignations of Chair and 1st Vice Chair - Call of Special Meeting



### A2. Attachment – Summary of Handling of Resignation and Succession.docx

Provided References

- Corporate Bylaws Libertarian Party of Michigan Executive Committee Inc. (1040780.2)-c.pdf
- Libertarian Party of Michigan Executive Committee, Inc Articles of Incorporation.pdf
- Resignation Boren.pdf
- Resignation Yow.pdf

External References

- Libertarian Party of Michigan – Bylaws - https://michiganlp.org/bylaws/j
- Roberts Rules of Order, 12th edition

Chair Tim Yow and 1st Vice Chair Ben Boren submitted by email their written resignations (in one email sent by Tim) to the LPMI leadership on Wednesday, June 15, 2022.

Per Article III Section 2 of the Corporate Bylaws, a resignation occurs when a member of the Executive Committee submits a written notice to the Secretary.

> **Section 2. Resignation and Removal.** A director may resign by written notice to the corporation Secretary. A director may be removed only as provided in the LPM Bylaws for the removal of a member of the Executive Committee.

Per Article V Section 2 of the Corporate Bylaws, a resignation is effective upon its receipt (as defined above).

> **Section 2. Term, Removal, and Vacancies.** An officer shall hold office for the term specified in the LPM Bylaws, or until the officer's death, resignation, or removal as provided in the LPM Bylaws. An officer may resign by written notice to the corporation Secretary. The resignation is effective upon its receipt by the corporation or at a later date specified in the notice.

LPMI Bylaw Chapter 3 Section 10 does not apply to this situation, because it specifically states "if the chair is *so* removed", which refers specifically to the case of removal for 3 consecutive absences or for failure to perform his or her fiduciary duties. There is no mention of resignation in the context of the bylaw, nor is there any reference to a general rule for succession.

> 10. A member of the Executive Committee who misses three consecutive meetings of the Executive Committee or fails to perform his or her fiduciary duties may be removed from the Executive Committee and replaced by a two-thirds vote at a regular meeting of the Executive Committee or a majority vote at convention following a motion for a vote of no confidence. All Executive Committee members must be notified of the intent to remove at least 14 days prior to the meeting. A Congressional district representative may be replaced by a majority vote of a congressional district caucus at any state convention. If the chair is so removed, the first vice chair shall assume the chair and a new first vice chair elected. If a Congressional district representative resigns or is so removed, then the Executive Committee must replace him or her with a person residing in the same Congressional district, who shall serve until the next state convention, at which time the caucus for that Congressional district shall select a replacement for the balance of his or her term.

Since the LPMI Bylaws and the Corporate Bylaws are silent on details of succession to fill the chair vacancy, it will default to RONR.

Applicable section of RONR are 47:28, 47:29

> 47:28    In case of the president's resignation, death, or removal, the vice-president automatically becomes president for the remainder of the term, unless the bylaws *expressly* provide otherwise for filling a vacancy *in the office of president* (see also 56:32).
>
> 47:29    Some societies elect several vice-presidents in an order of precedence—first, second, third, and so on—in which case the highest-ranking one present has the duty of serving in place of the president when needed. In case of the president's resignation, death, or removal, the first vice-president then automatically becomes president (unless, as indicated above, the bylaws expressly provide otherwise for the office of president). Likewise, in case of any vice-president's resignation, death, or removal, or upon his or her automatic promotion to a higher office, the next-highest-ranking vice-president, if there is one, is automatically promoted (unless the bylaws expressly provide otherwise). Thus, for example, if the first vice-president resigns, the second vice-president becomes first vice-president, the third vice-president becomes second-vice-president, and so on, with the vacancy to be filled occurring in the lowest-ranking vice-presidency. A vice-president cannot decline to take the higher office to which he has been automatically promoted; if unable or unwilling to carry out the duties of the new office, his only recourse is then to submit his resignation, upon the acceptance of which he will no longer hold either office.

### A3. Reference Documents

See the following documents submitted along with the appeal

- "Resignation Yow.pdf",
- "Resignation Boren.pdf",
- "Corporate Bylaws Libertarian Party of Michigan Executive Committee Inc.(1040780.2)-c.pdf",
- "Libertarian Party of Michigan Executive Committee, Inc. Articles of Incorporation.pdf"
- "RONR 47_28 47_29.jpg"

B. Announcement email for convention notice and for 2nd candidate training

