## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

LIBERTARIAN NATIONAL          |
      COMMITTEE, INC.,          |
                           |

     Plaintiff,          |
    v.          |          CIVIL ACTION NO.:
                           |

MIKE SALIBA,  et. al.          |          23-cv-11074
                           |

     Defendants          |
                           |          Hon. Judith E. Levy

                           |

_____|

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

## I.      INTRODUCTION

Plaintiff, LNC, Inc., is the National Committee of the Libertarian Party as defined by 52 U.S.C. §30101(14) and manages the business of the Libertarian Party throughout the United States at the national level which includes chartering state-level organizations. [Exhibit 5].   As part of its management of the Party, Plaintiff has registered a number of trademarks with the USPTO that are associated and identified with its national and local political activities and affiliations. Plaintiff's Trademarks include the federally registered trademark rights to "Libertarian Party" Reg. No. 2,423,459 and Logo Reg. No. 6,037,046:

[Exhibit 2]                                    [Exhibit 3]



The "Libertarian Party" mark has been in use in commerce at least since January of 1972 and has been granted incontestable status by the USPTO through meeting the requirements of 15 USC §1065.   The "Libertarian Party" mark is incontestable (35 USC 1115) and famous (35 USC 1125).   The "Libertarian Logo" mark has been in use in commerce at least since 2015.

1

Properly chartered affiliates are licensed to use the LNC's federally registered trademarks.   In 1972, the LNC chartered the Libertarian Party of Michigan (LPM), as an affiliate of the Libertarian Party.   The LPM is licensed to use the "Libertarian Party" and "Libertarian Logo" marks, Defendants are not licensed.

The governing arm of the LPM is the Libertarian Party of Michigan Executive Committee, Inc. ("LPMEC").   The directors of the LPMEC are defined in their Articles of Incorporation and Corporate Bylaws and are recognized as an affiliate by the Plaintiff, LNC.   [see Exhibit 1, Articles of Incorporation and Bylaws of LPMEC,]    The LPM has a legitimate LPMEC that is recognized and authorized by the LNC to use Plaintiff's Trademarks.

Defendants, who are not the LPM and are not the LPMEC, as recognized by Plaintiff, the LNC, are not authorized nor licensed to use the LNC's registered trademarks.    However, Defendants have, without permission and without license, beginning in January 2023, willfully adopted, used and infringed one or both of the LNC's federally registered trademarks as a group improperly holding themselves out to the public using the registered trademarks of Plaintiff.

Defendants have used the registered marks and marks that are confusingly similar in commerce, including holding themselves out as "Libertarian Party of

MI" (see exhibit 10) and "Libertarian Party of Michigan" [exhibits 11, 16 and 25]

Libertarian Party of Michigan

**Libertarian Party of Michigan: CALL TO CONVENTION**

Libertarian Party of Michigan <noreply@michiganlp.org>
Reply-To: r.8.38.b5f76b2546ef8678@michiganlp.net

Mike Saliba,
In the role of Chair,
Libertarian Party of Michigan

and the logo



Defendants have also attempted to cause and have caused confusion by registration

of "michiganlp.net" to be confusingly similar to "michiganlp.org" [Exhibit 13].

Defendant's infringement has caused harm and damage to the LNC,

including monetary harm, political harm and reputational harm to the LNC, the

Libertarian Party and the LPM.   [Chadderdon Declaration EX39] The infringing

use of the registered marks of Plaintiff have also caused dilution and

disparagement of the Plaintiff's federally registered trademarks and the good will

3

associated therewith. [Chadderdon Declaration EX39]   Defendants have used the LNC's federally registered marks to, among other things, solicit funds and to illegitimately suggest their activities and organization are affiliated with the Plaintiff without the Plaintiff's consent. [Chadderdon Declaration EX39]

Prior to the filing of this action, Plaintiff and the LPM sent several cease and desist letters to Defendants (Exhibits 6 and 8).   Defendants refused to respect Plaintiff's registered marks, thus necessitating this action. [Exhibits 7 and 9] Subsequent to the filing of this action, Defendants have continued to refuse to discontinue their infringing use of the "Libertarian Party" (LP) mark.   Defendants have recently stopped their use of the Libertarian Torch-Eagle Logo and have stipulated to no further use.

Because of the on-going and irreparable harm caused by the continued infringement by Defendants, and given the rapidly approaching vitally important period for the nomination of national, Federal and state candidates, raising campaign funds and generating national awareness, a preliminary injunction is necessary to preserve the integrity of the candidate and delegate nomination process and is in the vital public interest of preserving confidence in the electoral process and to avoid public election confusion.

Defendants are willfully and maliciously infringing on the LNC's mark,

diluting the LNC's marks, misleading the public through false advertising and claims, presumptions, or insinuations of affiliation with the Plaintiff, misleading and fraudulent solicitation of political donations, making misrepresentations to the FEC and the State of Michigan claiming the status of being the authorized state committee of the LNC and entitled to use its trademark in a corporate name, engaging in unfair competition with the LNC's authorized affiliate and user of its trademarks, and causing irreparable harm to the LNC.

## II.    ARGUMENT SUMMARY

This is a straightforward case of trademark infringement (under 15 U.S.C. §1114(a)) and false designation (under 15 U.S.C. §1125(a)).   Plaintiff's marks are registered, with one mark incontestable and famous.    Defendants use the identical marks, on the identical goods and services, with the specific intent of confusing the public and claiming/insinuating direct affiliation with the Plaintiff.   Defendants are not authorized nor licensed to use Plaintiff's marks and have no claim to such authorization.   There are no facts in dispute regarding any license to use either trademark and no facts in dispute regarding the use of the trademarks by Defendants. Thus a preliminary injunction is appropriate because, as Plaintiff will demonstrate herein, there is a high likelihood, if not certainty that Plaintiff will

prevail and the balance of all factors is in favor of Plaintiff.

In the sixth Circuit, when considering a motion for a preliminary injunction, the Court considers: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Graveline v. Johnson*, 747 F. App'x 408, 412 (6th Cir. 2018) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012)). also *U.S. v. Edward Rose Sons,* 384 F.3d 258, 261 (6th Cir. 2004). Also see *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) "factors to be balanced" not required.

All of the factors favor Plaintiff.

(1) Plaintiff has a strong likelihood of success.   Plaintiff's two registered trademarks, one of which is incontestable, are directly copied.   There is no issue as to confusion nor as to similarity.

(2) Plaintiff will suffer irreparable harm, voters will be confused and lost, possibly forever, votes will be lost, fund-raising vitally necessary for the party has been and will continue to be misdirected, none of which will be recoverable and voter trust and confidence, not only in the LNP but in politics may be forever

6

eroded.

(3) The injunction will cause no harm to others, and will in fact confer a benefit by providing voters with greater knowledge by requiring Defendants to distinguish themselves from the Libertarian National Party instead of attempting confusion by the pretense of being licensed by and affiliated with the LNP.

(4) The public interest would clearly be served by an injunction that enforces truth and avoids confusion in political advertising.

## III.   ARGUMENT

## A.   Success on the Merits

Plaintiff's Trademark "LIBERTARIAN PARTY" is incontestable, as defined by section 32(b) of the Lanham Act   15 USC §1115(b) which provides that:

> To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.

The US Supreme Court has established that incontestable status is important to the issue of injunctions:

> . . . § 33(b)'s declaration that the registrant has an "exclusive right" to use the mark indicates that incontestable status may be used to enjoin infringement by others. A conclusion that such infringement cannot be enjoined renders meaningless the "exclusive right" recognized by the statute. Moreover, the language in three of the defenses enumerated in § 33(b) clearly contemplates the use of incontestability in infringement actions by plaintiffs. See §§

7

33(b)(4)-(6), 15 U.S.C. §§ 1115(b)(4)-(6)." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985)

In the trademark context, establishing a strong likelihood of success on the merits is "often decisive" in determining that a preliminary injunction is warranted. *PGP, LLC v. TPII, LLC*, 734 F. App'x 330, 332 (6th Cir. 2018). This is because "[i]f the movant is likely to succeed on an infringement claim, irreparable injury is ordinarily presumed, and the public interest will usually favor injunctive relief." *Id.* (citing *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) and *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 532–33 (6th Cir. 2004)). To show that they are likely to succeed on the merits of their infringement and unfair competition claims, Plaintiffs need establish only that: (1) they own the two federally registered trademarks at issue; (2) Defendants are using the marks in commerce; and (3) Defendants' use of the marks is likely to cause confusion. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)). *See Victory Lane Quick Oil Change, Inc. v. Darwich*, 799 F. Supp.2d 730, 735 (E.D. Mich. 2011) ("Under the Lanham Act . . . we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin"). Here, it is undisputed that Plaintiff LNC owns the "Libertarian Party" and "Libertarian Logo" marks, and undisputed that the "Libertarian Party" mark is incontestable.

8

Defendants have used both the "Libertarian Party" and "Libertarian Logo" and are not licensed by Plaintiff to use these marks.   Defendants continue to use Plaintiff's Libertarian Party mark in commerce.   Confusion is certain, as both Plaintiff and Defendants offer the same services in the same channel of trade. Concerning the final element of likelihood of confusion, the Sixth Circuit has held that "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark has been terminated is sufficient to establish 'likelihood of confusion.'" *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997). Because Defendants are using Plaintiff's "LP" trademark without permission and thereby creating a likelihood of confusion, Plaintiffs have established a likelihood of success on the merits of their trademark and unfair competition claims.

### B.    Irreparable Injury to Plaintiffs Absent the Injunction

The Court must examine whether the Plaintiffs will suffer irreparable injury without the injunction. *Tenke Corp.*, 511 F.3d at 550. The Sixth Circuit has specifically held that "[i]n trademark infringement cases, a likelihood of confusion or possible risk to the requesting party's reputation satisfies the irreparable injury requirement." *Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 555 (6th Cir. 2013) (citing *Wynn Oil Co.*, 943 F.2d at 608). *See Ford Motor Co. v. Lloyd*

9

*Design Corp.*, 22 F. App'x 464, 469 (6th Cir. 2001) ("[W]here a plaintiff makes a strong showing of likelihood of confusion, irreparable harm follows as a matter of course."). The reasoning is that irreparable injury stems both from the potential difficulty plaintiff will have in proving damages, and also from "the impairment of intangible values." *Darwich*, 799 F. Supp. 2d at 736 (citing *Wynn Oil*, 943 F.2d at 608). The Sixth Circuit has also acknowledged that "[a] loss of customer goodwill often amounts to irreparable injury." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

It is inevitable that Defendants' use of "Libertarian Party" will cause confusion and cause voters, members, potential members and donors to be confused as to the association of Defendants with Plaintiff.   Defendants' political positions, political rhetoric and political platforms will be confused and attributed to Plaintiff to the significant and permanent detriment of Plaintiff.

Plaintiff will suffer irreparable harm, voters, members, potential members and donors will be confused and lost, possibly forever, votes will be lost, fund-raising vitally necessary for the party has been and will continue to be misdirected, none of which will be recoverable and voter trust and confidence, not only in the LNP but in politics may be forever eroded.

### C.    Substantial Harm to Others

The third factor for the Court to consider is whether issuing an injunction would cause substantial harm to others. *Tumblebus Inc. v. Cramer*, 399 F.3d 754, 769 (6th Cir. 2005).   In this case, Defendants will not suffer harm if they are compelled to properly identify themselves as an organization that is not affiliated with the Libertarian National Party. Defendants can present their opinions in the free and open market of ideas and ideals, without confusing voters as to the origin and association of those opinions.

The injunction will cause no harm to others, and will in fact confer a benefit by providing voters with greater knowledge, by requiring Defendants to distinguish themselves from the Libertarian National Party instead of attempting confusion by the pretense of being licensed by and affiliated with the LNP. A local chapter of a national organization "cannot complain when they lose the private privileges incident to affiliation," *U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 146. (3d Cir. 1981).

The Defendants are certainly free to start a new organization and solicit funds following the rules for political parties, political action committees, and corporations in the state of Michigan and/or to affiliate with a different national organization using designations other than the LNC's trademarks.

**D.    Public interest served by the injunction**

11

The final factor to evaluate in deciding a motion for preliminary injunction is "whether the public interest would be served by the issuance of the injunction." *Tumblebus*, 399 F.3d at 760. As an initial matter, there is a public interest in "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006) (citation omitted). Further, as specifically noted by another court in his district, "[t]he public interest is especially served by issuing a preliminary injunction against a former franchisee as a licensee's status increases the probability of consumer confusion." *Little Caesar Enterprises, Inc. v. R-J-L Foods, Inc.*, 796 F. Supp. 1026, 1036 (E.D. Mich. 1992) (Edmunds, J.) (quoting *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, (2d Cir. 1986)). This reasoning has been extended from franchises to political parties and their affiliated or former affiliated state organizations. see also *Republican National Committee v. Canegata et. al.*, No. 3:22-cv-0037 (V.I., St. Thomas and St. John Div.) relying on *U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 142-43 (3d Cir. 1981), to extend the reasoning of *Little Caesar* and *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) to political parties. "When a "splinter group [of the GOP] continue[s] to use" the trademarks that it no longer has permission to use, such a

12

"concurrent use of the … marks by both parties" constitutes infringement by the splinter group."   [See Preliminary Injunction granted, Exhibit 31]

Because Defendants were previously associated with Plaintiff and because they actively, and improperly, hold themselves out as currently associated with Plaintiff, there is a substantial likelihood that consumers (voters, members, potential members, and donors) will be confused. The public interest would be served by a preliminary injunction that enforces truth and avoids confusion in political advertising.

### E.    All Factors Weight in Favor of an Injunction

Examined together, or examined individually, all four factors weigh strongly in favor of granting Plaintiff's motion for a preliminary injunction.

### IV.    THE FACTS SUPPORT A PRELIMINARY INJUNCTION

### A.   Likelihood of Success on the Merits

### 1.   The LNC Owns Valid and Legally Protectable Marks

The LNC owns several federally registered trademarks [Comp ¶¶13, 17-18] as follows:   "Libertarian Party" Reg. No. 2,423,459 was registered on January 23, 2001, and has been in use in commerce at least since January of 1972. This mark is incontestable under 15 U.S.C. §1065. [see Exhibit 7] and the "Libertarian" logo Reg. No. 6,037,046 was registered on April 21, 2020, has been in use in commerce

at least since 2015. [see Exhibit 8]

> ### a.   The LNC does not recognize the Defendants as legitimate affiliate officeholders entitled to use its marks.

Political parties have a First Amendment right "to organize with like-minded citizens in support of common political goals." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 215 (1986). This constitutional right encompasses "a political party's decisions about the identity of, and the process for electing, its leaders." *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 229 (1989).

> ### b.   Defendants use the LNC's trademarks without authorization and in violation of Federal law.

Defendants would have the right to use the LNC's trademarks "only by affiliation with" the LNC. U.S. Jaycees, 639 F.2d at 142-43.

As detailed throughout the LNC's complaint and supporting exhibits, and as supported herein by Declarations, the Defendants have continued to willfully use the LNC's trademarks even after receiving multiple cease and desist letters [Comp ¶¶22-23][Exhibits 6, 8, 21, 24, 36][See Chadderdon EX39 and Harlos EX40 Declarations]   including misleading the public through false advertising and claims, presumptions, or insinuations of affiliation with the Plaintiff, misleading and fraudulent solicitation of political donations, making misrepresentations to the

14

FEC and the State of Michigan claiming the status of being the authorized state committee of the LNC and entitled to use its trademark in a corporate name, and engaging in unfair competition with the LNC's authorized affiliate and user of its trademarks. [Exhibits 7, 9, 10, 11, 13, 14, 16, 20, 23, 25, 33, 34, 35, 37, 38] See Chadderdon and Harlos Declarations EX39 and EX40]

Defendants continue to send out monthly communications to the membership of the LNC's legitimate affiliate claiming their status and disparaging the legitimacy of their annual convention which is set for July 2023. [see Chadderdon Declaration EX39]   The recognized affiliate's website is www.michiganlp.org.   Defendants have registered and are using the intentionally confusing sites www.michiganlp.net and www.michlp.org.   The use of these websites is also causing confusion with the proper licensee of Plaintiff's marks and is thus harming Plaintiff's marks and should be enjoined.

### 2.  Likelihood of Confusion

The Lanham Act prohibits, without consent of the registrant, "the use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any good or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C.

§1114(1)(a).

In resolving claims for trademark infringement, the critical issue is whether "the simultaneous use of two trademarks is likely to cause confusion." *Lopes v. International Rubber Distributors, Inc.*, 309 F. Supp. 2d 972, 981-982 (N.D. Ohio 2004) quoting *Jet, Inc. v. Sewage Aeration Systems,* 165 F.3d 419, 421 (6th Cor. 1999).    "This 'likelihood of confusion' test involves the application of the following facts: (1) strength of the plaintiff's mark,    (2) relatedness of the good or services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) the defendant's intent in selecting its mark, and (8) likelihood of expansion of the product lines." *Lopes, supra.* at 982 quoting *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F. 2d 642, 648 (6th Cir. 1982).    "These factors 'imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful.'" *Lopes, supra.* at 982 quoting *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1183 (6th Cir. 1988).    "The ultimate questions remains whether relevant consumers are 'likely to believe that the products or services offered by the parties are affiliated in some way.'" *Lopes, supra.* at 982 quoting *Daddy's Junky Music Stores v. Big Daddy's Family Music Center,* 109 F. 3d 275, 280 (6th Cir. 1997).    The LNC's evidence in its Complaint

16

and herein readily satisfies all of these elements.

### a.   Degree of Similarity

The marks used by Defendants are identical to the registered marks, and identical in every way to the marks used by the recognized state affiliate of the LNC. "Very little analysis is needed" where the infringer uses the identical mark and there is a "concurrent use of the … marks by both parties." *Opticians Ass'n*, 920 F.2d at 195. That's because "there is great likelihood of confusion when an infringer uses the exact trademark." *U.S. Jaycees*, 639 F.2d at 142.   This is even more important in this instant case as there is an existing authorized geographical affiliate using the exact same name with the LNC's trademark of "Libertarian Party."   Further, like the instant case, there was an affiliation relationship, and the dispute was initially caused by an ideological split in the Jaycees' organization.

In both of these cases, the Third Circuit reversed the district court to the extent it failed to grant a preliminary injunction for the mark-holder, *Opticians Ass'n*, 920 F.2d at 198, or because the district court failed to grant "a broad injunction" to afford the mark-holder the "broad protection" to which it was "entitled," *U.S. Jaycees*, 639 F.2d at 143.

In December 2022, the LNC recognized the LPM/LPMEC chaired by Andrew Chadderdon as its official Michigan affiliate entitled to use its marks

[*supra.,* Comp ¶¶14, 22-23]. Yet, Defendants continue to use the LNC's marks—the identical marks—to continue operating as a splinter group disassociated from the LNC and in soliciting funds from donors from all over the nation.

Lastly, proof of continued, unauthorized use of an original trademark by a party whose license to use the trademark has been terminated is sufficient to establish "likelihood of confusion." *U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1190 (6th Cir. 1997). Where a defendant continues to hold themselves out as having some affiliation with a plaintiff – by continued use of a trademarked name after termination of the affiliation – they are using plaintiff's marks without permission and thereby creating a likelihood of confusion. *Little Caesar Enters. v. Miramar Quick Serv. Rest. Corp.*, No. 2:18-cv-10767, 2019 U.S. Dist. LEXIS 117942 at *14 (E.D. Mich. July 16, 2019).

### b.   Evidence of Actual Confusion

Although evidence of actual confusion is not required, it is "the best evidence of the likelihood of confusion."   *Servpro Intellectual Prop., Inc. v. Blanton*, 651 F. Supp. 3d 710, 724 (W.D. Ky 2020) quoting *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988). The legitimately recognized Michigan affiliate has received numerous written and verbal inquiries indicating actual confusion in addition to widespread confusion and questions on social

18

media. [see Declaration of Caryn Ann Harlos EX40 at ¶39 and Declaration of

Andrew Chadderdon EX39 at ¶14(e) referencing Exhibit 34 for samples of email

inquiries to the recognized affiliate indicating confusion.]   Further, even attendees

at Defendants' illegitimate Lansing convention on April 1, 2023, evidenced

confusion [see Declaration of Andrew Chadderdon EX39 at ¶3(i) and 14

referencing transcript of Convention video YouTube video at

https://youtu.be/p1TkFtLwyNg beginning about timestamp 1:20]

> First speaker: "I just want clarification. I got an email, I can't remember
> who signed it.   I apologize.   It clearly says that the National Organization
> does not recognize the, us in here.   Is that true or just propaganda?   Cause I
> am confused on this issue.   So where are we?   Meeting Chair: "Andrew
> (Chadderdon) is the chair of the board that they recognized. So I don't think
> they have made a position that all of the member who are here are no longer
> members of the Libertarian Party of Michigan."

### c.   Strength of the Marks

Federal registration of a trademark is prima facie evidence of the mark's

validity and of the registrant's exclusive ownership of and right to use the mark.

*Wigs for Kids, Inc. v. Wigs 4 Kids of Mich., Inc.*, No. 17-11471, 2017 U.S. Dist.

LEXIS 209946 at *10 (E.D. Mich. Dec. 21, 2017) [citing 15 U.S.C. § 1057(b)].

The LNC's "Libertarian Party" trademark has attained incontestability status.

An incontestable mark is statutorily entitled to "be conclusive evidence of the

validity of the registered mark" 15 USC 1115(b).   An incontestable "mark must be

considered strong and worthy of full protection." Lopes, *supra.* at 982 quoting *Wynn Oil Co., supra.* at 600.

Further, the LNC's "Libertarian Party" mark is a "famous mark" as defined by 35 USC 1125(c)(2) because "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."    "Libertarian Party" has become famous and acquired secondary meaning through fact that the Party has ran Presidential candidates for the past fifty years and actively runs candidates in multiple elections throughout the entire United States and spends significant amounts of resources on national, statewide and local political advertising. [Harlos Declaration EX40]   The "Libertarian Party" mark is valid and enforceable. In the minds of the public, the primary significance of Libertarian Party identifies the source, product and service of the Libertarian Party. *Inwood Labs. v. Ives Labs.,* 456 U.S. 844, n. 11 (1982).

As a "famous" mark, "Libertarian Party"   "shall be entitled to an injunction against another person who, . . . commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 USC 1125(C)(1)

The LNC's "torch eagle" mark is distinctive and the copied use by

Defendants is exact.

### d. Intent of the Defendants

All the evidence presented in the LNC's complaint and supporting exhibits shows a definite intent to use the LNC's mark including maliciousness and bad faith [Comp ¶30]. see: Exhibit 35, a flyer originally produced by the recognized Michigan affiliate which was then taken in its entirely by the Defendants with only the QR code swapped out to direct to an unauthorized website, and Exhibit 36, email dated May 24, 2023 in which Defendant Saliba actively tells members to disregard the upcoming legitimate convention by the LNC's recognized Michigan affiliate.   In *Lopes*, *supra.* at 983, it is noted that a "suggestion of intentional copying support[s] an inference that [defendant] intended to confuse.... and bolsters the Court's finding that [plaintiff] is substantially likely to prevail on the merits of his trademark infringement claim."

In this matter, the Defendants also intentionally confused voters with the intent to redirect web traffic by registering and using a website "michiganlp.net" that bears the same name and a very similar design to the recognized affiliates "michiganlp.org" [Comp ¶27][Exhibit 13].

### B.  The LNC Will Suffer Irreparable Harm

In infringement actions, the general rule is that "an irreparable injury

ordinary follows when a likelihood of confusion or possible risk to reputation appears." *Lopes, supra.* at 983 quoting *Wynn Oil Co., supra.* at 608.   To the extent that the LNC has already shown a likelihood of success, it is entitled to a presumption that it will suffer irreparable harm absent an injunction. *Id.* Defendants' soliciting funds from donors using the LNC's marks as evidenced in the LNC's Complaint will irreparably harm the LNC's reputation among and relationships with donors as well as trust that their data will not be used by unauthorized entities, and once wounded, these harms cannot be adequately restored through monetary compensation [Comp ¶¶34, 36, 39][Chadderdon EX 39 and Harlo Declarations EX 40]. The LNC's good name and reputation is presently being tarnished by Defendants' actions drawing attention to this controversy [see Exhibit 37, article dated May 8, 2023, appearing on the front page of the print edition of *The Detroit News*, and also note that Defendant Saliba appeared on *The Robert Ficano Show* on May 14, 2023, see Declaration of Andrew Chadderdon EX39 at ¶3(q).

This Court's issuance of injunctive relief is the only way to prevent further harm to the LNC's good name and reputation.

## C.   Substantial Harm to Defendants

Defendants will not suffer harm if they are compelled to properly identify

themselves as an organization that is not affiliated with the Libertarian National Party. Defendants can present their opinions in the free and open market of ideas and ideals.   Being enjoined from confusing voters as to the origin and association of those opinions will cause no harm.

### D.   Public Interest

The public interest warrants granting relief to the LNC. "Public interest … in a trademark case … is most often a synonym for the right of the public not to be deceived or confused." *Opticians Ass'n*, 920 F.2d at 197; *accord Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 730 (3rd Cir. 2004),   "The most basic public interest at stake in all Lanham Act cases [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy." "Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest." *S&R Corp. v. Jiffy Lube Intern., Inc*, 968 F.2d 371, 379 (3rd Cir. 1992).

The likelihood of confusion and actual confusion is definite here because Defendants are knowingly and unlawfully using the LNC's actual marks and those of its recognized Michigan affiliate and purposefully generating such confusion. This kind of confusion is especially not in the public's interest; as just one example, federal law already makes it a crime to make false representations in

solicitations for political donations. 18 U.S.C. §1341; 52 U.S.C. §30124. The activities of Defendant Thornton-Canny are already the subject of an FEC complaint filed by the LNC for her fraudulent identification of herself as treasurer of the recognized state committee of the NLP [Comp ¶26]. Further, with all the current attention on elections and election integrity, confusion in the identity of political parties is particularly chaotic to the public interest.   In this matter, "an injunction would eliminate confusion generated by [Defendants'] infringement." *Opticians Ass'n*, 920 F.2d at 198.

## V.    CONCLUSION

For the foregoing reasons, the Court should  grant the LNC's motion for a preliminary injunction to stop Defendants use of Plaintiff's registered trademarks, award fees for the cost and legal fees necessary for this motion, and grant any and all other relief to which Plaintiff may show itself to be entitled.

June 15, 2023                                     Respectfully Submitted,


                                  /s/ Joseph J. Zito
                                 Joseph J. Zito
                                 FRESH IP PLC
                                 1250 Connecticut Avenue, NW
                                 Suite 700
                                 Washington, DC 20036
                                 jzito@steinip.com
                                 (202) 466-3500

*Designated Local Counsel*
Oscar A. Rodriguez (P73413)
126 South Main Street
Ann Arbor, MI 48104
(734) 662-4426
orod@hooperhathaway.com

**ATTORNEYS FOR PLAINTIFF
LIBERTARIAN NATIONAL
COMMITTEE, INC.**

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the forgoing Reply to Response To Motion for Preliminary Injunction and accompanying Declarations, and Exhibits was filed on October 2, 2023 with the United States District Court for the Eastern District of Michigan through the CM/ECF system, and that all counsel of record were served by the CM/ECF System.

Respectfully Submitted:

 /s/ Joseph J. Zito
Joseph J. Zito