IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LIBERTARIAN NATIONAL COMMITTEE, INC. | |
| Plaintiff, | |
| v. | CIVIL ACTION NO.: |
| MIKE SALIBA, et. al. | 23-cv-11074 |
| Defendants. | Hon. Judith E. Levy |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY

### CONCISE STATEMENT OF THE ISSUES PRESENTED

Correctly stated Issue Presented: Should Defendants be allowed to present themselves as the recognized state affiliate of the National Libertarian Party, when in fact they are not affiliated? The answer is no, Defendants should not be allowed to create voter confusion through false identification.

The issue presently before the Court is whether Defendants have made an adequate showing to justify issuing a stay on the Court's Order granting a Preliminary Injunction to the Plaintiff. Defendants have in fact made no showing but instead rely solely on their prior brief.

Defendants' assertion of "irreparable damage" to Defendants' "political identity" is simply non-existent. Defendants are free to identify in any political

1

manner desired, except to hold themselves out publicly as the official state organization of the Democratic, Republican or Libertarian party. This restriction does not damage Defendants, however lifting this restriction would result in chaos for all national parties, allowing anyone to claim any desired affiliation and thus destroy everyone's fundamental right to association.

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

15 USC Chapter 22 – Trademarks

15 USC Sec. 1101 et seq. Trademark infringement, 15 U.S.C. §1114(a)

False designation of origin 15 U.S.C. §1125(a).

Incontestable marks, 35 USC Sec. 1115.
"conclusive evidence of validity and . . .registrant's exclusive right"

Famous Trademarks, 35 U.S.C. Sec. 1125.

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985) "incontestable status may be used to enjoin infringement"

Sixth Circuit cases on preliminary injunction, (1) likelihood of success on the merits; (2) irreparable injury; (3) substantial harm to others; and (4) the public interest, *Graveline v. Johnson*, 747 F. App'x 408, 412 (6th Cir. 2018); *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012)); *U.S. v. Edward Rose Sons,* 384 F.3d 258, 261 (6th Cir. 2004); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007)

Freedom of political association (1st and 14th Amend to US Constitution)

*Tashjian v. Republican Party*, 479 U.S. 208 (1986)

*Michigan Coalition v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)

## I. INTRODUCTION

The primary purpose of granting the injunction was to prevent voter confusion. The primary basis of the right to the injunction: Plaintiff owns the incontestable trademark and Defendants are not licensed to use the trademark.

Defendants' Motion is based upon a false premise, found on Page 1 of their Brief (EFC PageID 1173): ". . . Defendants, actively involved in the Libertarian Party. . . " The injunction does not interfere in any way with Defendants' involvement in the Libertarian Party. Defendants are members of the Libertarian Party, they are not the Libertarian Party. Their group cannot hold itself out as the Libertarian Party of Michigan. Defendants' "involvement" in the Libertarian Party as members of the Libertarian Party allows them to freely express all of their political opinions and grievances. Being a member of a Party is different from being The Party. Defendants' basic premise ignores this difference.

The right to free speech is not absolute, trademarks by their very nature are a limitation on free speech when the speaker confuses the relevant public.

Defendants' motion also repeats the inconsistencies of its opposition to the Motion for Preliminary Injunction. If the First Amendment gives defendants the right to call themselves the Libertarian Party, it grants that right to everyone. Then why would the Defendants need some implied right under the National Libertarian Party's Bylaws?

The Defendants' Motion to Stay Pending Appeal is an attempt at relitigating the issues already decided by this Court with absolutely no change in circumstances. The factors used in deciding whether or not to grant a stay are the same as used in deciding whether or not to grant a preliminary injunction, and those factors do not favor the Defendants any more than they did at the hearing on the injunction on August 23, 2023. The Plaintiff will also refrain from reiterating in full each of its arguments in support of its Motion for Preliminary Injunction [ECF No. 12] and its Reply to Defendants' Response to Plaintiff's Motion for Preliminary Injunction [ECF No. 17] but will respond briefly to the issues raised in the present filing.

## II. ARGUMENT

### A. Factors to be Considered in Granting a Stay

The determination of whether a stay should be granted traditionally rests upon the same four factors that are used in determining whether a preliminary injunction should be granted, to wit, (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Michigan Coalition v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). These factors have already been weighed in Plaintiff's favor and there is no "different

procedural posture" that would justify a different balancing act since there aren't more "complete factual findings and legal research" than there were in August. *Id* at 153.

Defendants have not presented anything new that changes the landscape to make it likely that they would prevail in an appeal either under a review standard of clear abuse of discretion by this Court or a *de novo* review via presentation of weighty, allegedly novel, issues of law. While the Sixth Circuit has not had an opportunity to opine on the character of political activities, no other circuit has ever ruled that political activities are purely non-commercial despite being addressed by district courts in multiple circuits, which have cited *United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86 (2nd Cir. 1997) in their decisions. The *United We Stand* decision was relied upon in granting a preliminary injunction regarding the Republication National Committee's trademarks in *Republican National Committee v. Canegata et al* (Case No. 3:22-cv-00374, Virgin Islands, Division of St. Thomas and St. John) under a fact pattern remarkably similar to this matter in multiple key points [*see* Plaintiff's Ex. 31, PAGEID.558-573].

This Court has already determined that absent an injunction that the Plaintiff would be irreparably harmed, and Defendants have not presented any evidence to contradict that finding. However, Defendants' unsupported argument ignores the

5

plain fact that Plaintiff is the holder of an uncontestable trademark and has the sole right to control its use.  The Defendants continued to willfully use the Plaintiff's trademark despite several cease and desist letters, and upon information and belief,[1] after the issuance of this Court's Order, stood outside the Courthouse displaying the trademark with the caption "Come and Take It."



Image  1 Defendants holding "Libertarian Party of Michigan, Come and Take it" signs outside of Courthouse.

---

[1] It is believed this was taken on the day of the hearing due to the clothing worn, and the fact it was posted that day, after the hearing, to Defendant's Saliba's Facebook account and remained posted for up to several days after.

It required the expenditure of attorney time sending a contempt letter in order to finally convince the Defendants to take down the Facebook posting.

There is no doubt that absent the injunction, Defendants will continue to cause irreparable harm to the Plaintiff, not vice versa. "The object and purpose of a preliminary injunction is to preserve the existing state of things until the rights of the parties can be fairly and fully investigated..." *In re DeLorean Motor Co.* 755 F.2d 1223, 1229 (6th Circ. 1985) quoting *Blount v. Societe Anonyme de Filtre Chamberland Systeme Pasteur*, 53 F. 98, 101 (6th Cir. 1892). The existing state of things was that the organization chaired by Mr. Andrew Chadderdon, not Defendants, was granted sole use of the trademark to identify as the Libertarian Party affiliate in Michigan. This state of affairs is recognized by the Federal Election Commission, the Michigan Bureau of Elections, and the Michigan Licensing and Regulatory Agency.[2]

There is also no doubt that the foundational principle behind trademark protection is a compelling interest to protect the public from deception as to origin

---

[2] The Michigan Bureau of Elections and the Federal Trade Commission defer to the national organization to identify its affiliate. This is a settled issue within the National Libertarian Party, absent affirmative action that withdraws recognition from the current affiliate and activates affiliation with another group.

7

or affiliation, "[p]ublic interest... in a trademark case... is most often a synonym for the right of the public not to be deceived or confused." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) *accord Kos Pharmaceuticals, Inc. v. Andrx Corp,* 369 F.3d 700, 730 (3rd Cir. 2004).  One would be hard-pressed to find an area today where that is more important than in the political arena.  A stay would not further the public interest of avoiding confusion in political advertising. The Defendants cannot be harmed by having to properly identify themselves as an organization that is not affiliated with the national Libertarian Party and can continue to present their personal opinions in the free and open marketplace of ideas.

    **B.    Improper Claim of Breach of Contract**

Defendants once again raise issues that were ruled irrelevant and inappropriate to be decided by this Court, that being the interpretation of Plaintiff's Bylaws in light of the absence of any counterclaim for breach of contract. [*see Transcript of Preliminary Injunction Hearing,* ECF No. 22,  PAGEID.1144-1149] Defendants appeal to the Declaration of Angela McArdle [Plaintiff's Ex. 42, para 4, PAGEID.843] in claiming that the Libertarian Party of Michigan has been the Michigan affiliate of the national Libertarian Party since it (the LPME) was formed in 1972.  However, they neglect the fact that the national Libertarian Party still recognizes its Michigan affiliate, and that is the organization chaired by Mr.

Andrew Chadderdon as stated in the very same paragraph in the McArdle Declaration as well as in paragraph 20 in the Declaration of Caryn Ann Harlos. [Plaintiff's Ex. 43, para 20, PAGEID.852-853] Defendants have not properly pled an action against the Plaintiff, and if they wished to do so, would need to do so in compliance with D.C. non-profit corporation law.

No matter how many times the Defendants claim there is a "governance dispute," this is again a mere assertion for which their actions do not conform. The national Libertarian Party Bylaws provide a process for such disputes which is an appeal to the Party's internal national Judicial Committee. The Defendants have completely failed to exhaust their internal remedies about which they were put on notice by the Plaintiff's National Committee through its Secretary. [Plaintiff's Ex. 43, para 17, PAGEID.851] They have publicly individually asserted that they do not wish to follow the Party bylaws since they do not believe they would win and thus are trying to sidestep the rules of the Party and instead use the Court.

### C. Erroneous Claims Regarding Lanham Act

Defendants, absent any decision from the 6th Circuit **or any other circuit**, that political activities are *de facto* non-commercial activities; point to their own presumption as proof of their conclusion. The presumption ignores the fact that there are nearly 500 active federal trademark registrations that list services including "political party services" or "political action committee services", issued

9

to a variety of holders including the Republican National Committee. Many of these registrations have reached incontestable status. There are also many more registrations that reference political activities, as well as numerous pending applications. Defendants' argument is a collateral attack on the Plaintiff's incontestable trademark registration and the entire USPTO, essentially claiming that all of these registrations are void as not relating to commerce that can be regulated by Congress.

    D.    **Conflation of Speech with Identity**

Lastly, Defendants continue to conflate their inability to falsely identify themselves *as* the Libertarian Party of Michigan with *using* the words "Libertarian Party" *in any context* and continue to incorrectly claim that being a member of the Libertarian Party grants them both a contractual and free speech right to claim that they are the Michigan affiliate of the Libertarian Party and hold themselves out as same to the public. Nothing is prohibiting the Defendants from using the Libertarian Party name to self-identify their individual membership, sympathies, support, or critique.

Their misplaced reliance on *Buckley v. Valeo*, 424 U.S. 1 (1976) continues with multiple obvious flaws. First, *Buckley* dealt with the scope of government regulation on political contributions and deemed certain portions of the regulations, those on individual campaign contributions, allowable. Thus, *Buckley* did not treat

individual rights to political donations as absolute, even though that is not at all applicable to the instant matter in the first place. Defendants are not prohibited by the Plaintiff from supporting candidates through their speech, time, or treasure. They are prohibited from falsely identifying themselves as the affiliate of the Plaintiff and using the Plaintiff's trademarks.

Interestingly, Defendants fail to note another aspect of the *Buckley* decision, that being the constitutional right to political freedom of association, *Buckley* at 15 "The First Amendment protects political association as well as political expression." See also *Tashjian v. Republican Party*, 479 U.S. 208 at 211 (1986) in which a Connecticut statute was found to " deprive[s] the Party of its First Amendment right to enter into political association with individuals of its own choosing." Plaintiff does not recognize Defendants as their recognized Michigan affiliate. If the Defendants are going to invoke constitutional issues, Plaintiff's rights in this regard are, unlike the argument of the Defendants, actually relevant to the issues.

### III. CONCLUSION

For all the reasons already articulated by the Court in granting the Preliminary Injunction in addition to the arguments presented above, the Plaintiff respectfully asks this Court to deny the Defendants' Motion for Stay. In the event

that the Court decides otherwise, Plaintiff respectfully requests the ordering of a substantial bond to protect its interests.

October 2, 2023                                             Respectfully submitted,

           /s/ Joseph J. Zito
**Joseph J. Zito**
DNL Zito Castellano
1250 Connecticut Ave., suite 700
Washington, D.C., 20036
202-594-2055
jzito@dnlzito.com

*Designated Local Counsel*
**Oscar A. Rodriguez (P73413)**
Hooper Hathaway
126 South Main Street
Ann Arbor, MI 48104
Telephone: 734-662-4426
orod@hooperhathaway.com

***ATTORNEYS FOR PLAINTIFF LIBERTARIAN NATIONAL COMMITTEE, INC.***

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the forgoing Oppositionto Motion to Stay was filed on October 2, 2023 with the United States District Court for the Eastern District of Michigan through the CM/ECF system, and that all counsel of record were served by the CM/ECF System.

Respectfully Submitted:

/s/ Joseph J. Zito

Joseph J. Zito