# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| LIBERTARIAN NATIONAL COMMITTEE INC., | |
| Plaintiff, | |
| | Case No. 23-cv-11074 |
| v. | |
| MICHAEL J. SALIBA, RAFAEL WOLF, GREG STEMPFLE, ANGELA THORNTON-CANNY, JAMI VAN ALSTINE, MARY BUZUMA, DAVID CANNY, JOSEPH BRUNGARDT, | Judith E. Levy United States District Judge |
| | Mag. Judge Elizabeth A. Stafford |
| Defendants. | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STAY PENDING APPEAL

### INTRODUCTION

Plaintiff downplays the severity of the Preliminary Injunction Order ("the Order") dated August 24, 2023 (ECF No. 21), which grants in entirety Plaintiff's relief sought in the Motion for Preliminary Injunction ("Motion") and places extraordinarily broad constraints on Defendants' ability to express their political identity. At the start of their Response to Defendants' Motion to Stay ("Response"), Plaintiff acknowledges that the Defendants are members of the Libertarian Party of Michigan[1] and asserts that the "injunction does not interfere in any way with Defendants' involvement in the Libertarian Party." *See* Response, ECF No. 30, Page I.D. 1217. This is patently false. Precluding Defendants' use of a mark for the purpose of party affiliation and identification inherently interferes with Defendants' "involvement" in the party. The Order inhibits Defendants' ability to campaign, attract members and fundraise for elected offices as members of the Libertarian Party.

---

[1] Notably, during the Court's consideration of the Plaintiff's Motion, there was a discussion with the Court regarding the issue of party membership. *See* Transcript of August 23, 2023 Preliminary Injunction Hearing, ECF No. 22, Page I.D. 1148 ("I'm just not in a position to say who is a libertarian and who is not a libertarian. That's for your members."). However, it is important to clarify that, there is no dispute regarding the Defendants' membership with the Libertarian Party. *See* Response, ECF No. 30 Page I.D. 1217 ("Defendants are members of the Libertarian Party . . . ").

# ARGUMENT

1. **Plaintiff Downplays the Scope of the Order and Ignores the Limitations Placed on Defendants' Freedom of Speech.**

The scope of the Order is not as narrow as Plaintiff suggests. Plaintiff now attempts to rewrite the scope of the relief sought in its Motion, which was subsequently granted, in full, by this Court. This Court granted Plaintiff's Motion, enjoining "Defendants from using the Plaintiff's federally registered trademark 'Libertarian Party' . . ." Order, ECF No. 21, Page I.D. 1134.

Plaintiff now argues Defendants may identify as members of the Libertarian Party while ignoring the language of the Order, which expressly prohibits Defendants from utilizing the "Libertarian Party" trademark. Plaintiff's Response suggests Defendants can use the "Libertarian Party" name, stating that "[n]othing is prohibiting the Defendants from using the Libertarian Party name to self-identify their individual membership, sympathies, support, or critique…" while simultaneously maintaining that Defendants may not use the "Libertarian Party" trademark. Response, ECF No. 30, Page I.D. 1217, 1224. Plaintiff's position in opposition to this Motion to Stay is incompatible with this Court's wholesale grant of the relief Plaintiff sought in the Motion.

By claiming both that Defendants can identify as members of the Libertarian Party and yet are barred from using the "Libertarian Party" trademark, Plaintiff adopts an internally inconsistent position. *See* Response, ECF No. 30, Page I.D. 1217

3

("Defendants cannot be harmed by having to properly identify themselves as an organization[2] that is not affiliated with the national Libertarian Party and can continue to present their personal opinions in the free and open marketplace of ideas"). Simply put, Defendants cannot identify as members of the Libertarian Party without using the trademarked name "Libertarian Party." Core to this litigation is the right to identify as a "Libertarian." Restricting Defendants' ability to identify as members of the Libertarian Party (even though their membership is undisputed) prevents Defendants from expressing themselves freely in the political arena.

Plaintiff illogically fears that without the Lanham Act's application to this case, the First Amendment would give anyone the right to claim they are *the* Libertarian Party. *See* Response, ECF No. 30, Page I.D. 1216 ("… [L]ifting this restriction would result in chaos for all national parties, allowing anyone to claim any desired affiliation . . ."). This fear is unfounded. Plaintiff sued Defendants in their individual capacities and acknowledged that Defendants are members of the Libertarian Party. Response, ECF No. 30, Page I.D. 1217. Defendants now seek to express their identities consistent with their membership. But this Order effectively bars Defendants, duly affiliated members, from voicing their own version of the

---

[2] Plaintiff's phrasing is inconsistent with the preliminary injunction requested by the Plaintiff and entered by the Court because the Order does not apply to Defendants only when they speak collectively; it applies to each of the Defendants as individuals. Order, ECF No. 21 Page I.D. 373.

4

Libertarian view in Michigan because Plaintiff ideologically disagrees with them. This result is alarming and inconsistent with the tradition of diverse political speech in this country, which is a hallmark of a vibrant democratic system. Political parties are inclusive of a broad spectrum of perspectives, from mainstream to unconventional. Individuals of those minority factions are not legally precluded from campaigning, attracting members and fundraising for elected offices as representatives of their party. Despite this democratic tradition, Plaintiff now seeks to stifle the speech of dissenting opinions within its own party. To allow the Lanham Act to abridge Defendants' core First Amendment rights in this manner is unconstitutional.

**2.      In the Sixth Circuit, There Is a Genuine Unresolved Issue of Law as to Whether the Lanham Act Applies to Political Speech.**

The Sixth Circuit has not explicitly ruled that the Lanham Act is inapplicable to political speech because it falls outside the commercial context. Several circuits have ruled that the Lanham Act only applies in the commercial context, "which is entitled to reduced protections under the First Amendment." *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003). In *Taubman*, the Sixth Circuit reversed a district court's entry of a preliminary injunction where the Defendant's website,

containing Plaintiff's trademark, was a "fan site" and not used for commercial purposes.³ *Id.*

The D.C. Circuit has addressed political speech in the context of the Lanham Act and dismissed a Lanham Act claim brought by an author against a blogger whose post contained political speech where Defendant blogger posted an article criticizing the Plaintiff author's book. *Farah v. Esquire Magazine*, 736 F.3d 528, 539 (D.C. Cir. 2013). The court held that the blog post did not constitute commercial speech because it "was fully protected political satire", and "compet[ition] in the marketplace of ideas is not sufficient to invoke the Lanham Act." *Id*. at 531, 541. Like in *Farah*, Defendants are not engaged in "commercial" speech. Defendants' purpose is to exercise their right to political speech, not profit from the sale of goods and services. Any interaction between Defendants and their constituency involving financial transactions is strictly to raise money for campaign purposes, an expressive activity protected by the First Amendment. *Buckley v. Valeo*, 424 U.S. 1, 14 (1976)

---

³ *See also Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1052-54 (10th Cir. 2008) (affirming grant of summary judgment in favor of Defendant and holding that Defendant's web-site parodying bookseller's website and using bookseller's trademark in several domain names was not commercial, even though it linked to competitor's website and homepage but not competitor's online store); *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676-77 (9th Cir. 2005) (affirming entry of summary judgment in favor of Defendant on trademark infringement claim where Defendant created website using Plaintiff's registered trademark and holding that "consumer commentary about the products and services represented by the mark—does not constitute infringement under the Lanham Act").

(noting that the solicitation of contributions to political campaigns is among "the most fundamental First Amendment activities."). Characterizing individuals who run for public office as accepting campaign contributions in return for services provided to donors is a distortion of the principles that underpin American democracy.

Further, Plaintiff's reliance on *United We Stand*, a nonbinding decision factually distinguishable from the present case, is unpersuasive. Response, ECF No. 17, Page I.D. 815; *United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86, 90 (2d Cir. 1997). In *United We Stand*, the Court affirmed a District Court's entry of summary judgment in favor of Plaintiff against a *separate* political organization, no longer affiliated with Plaintiff's presidential campaign, because Defendants' use of Plaintiff's registered campaign slogan created voter confusion between two, entirely different campaigns. *Id.* at 90. In the present case, Defendants were sued in their individual capacities and are *members* of Plaintiff's political party. Their speech does not attempt to confuse voters about whether they are in fact members of the Libertarian Party (that is undisputed), but rather voices dissent within the Libertarian Party.

Plaintiff implies that an interest in political affiliation means that a party may limit the political speech of those who participate in the party. *See* Response, ECF No. 30, Page I.D. 1225 (citing *Tashjian v. Republican Party of Conn.*, 479 U.S. 208

(1986) (striking down a Connecticut law that required voters in any party primary to be registered members of the party). The Supreme Court did not hold that freedom of association could be used to exclude individuals from participation in a party that they are already members of. In fact, the Court held quite the opposite, supporting the principle that a party (and its members) should be free to engage with individuals outside the party and prohibited "limit[ing] the Party's associational opportunities at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." *Id.* at 208. Here, Defendants' free speech rights in no way prevent Plaintiff from freely associating with individuals as it chooses (including their decision to associate with Defendants).

## CONCLUSION

The legal question remains as to whether the Lanham Act applies to political speech. Thus, the Preliminary Injunction should be stayed until resolution of this issue on appeal.

Date: October 9, 2023

Respectfully Submitted,

/s *C. Nicholas Curcio*
C. Nicholas Curcio
Curcio Law Firm, PLC
16905 Birchview Drive
Nunica, MI 49448
Telephone: (616) 430-2201
ncurcio@curciofirm.com

/s *Lena Shapiro*
Lena Shapiro
Director, First Amendment Clinic
University of Illinois College of Law
504 E. Pennsylvania Ave.
Champaign, IL 61820
Telephone: (217) 333-4333
Shapiro7@illinois.edu

*Attorney for Defendants*